Willie CLISBY, Petitioner–Appellant,

v.

**STATE OF ALABAMA, Fred Smith, Commissioner, Alabama Department of Corrections, and W.E. Johnson, Warden, Holman Unit, Respondents–Appellees.**

No. 93–6537.

United States Court of Appeals,
Eleventh Circuit.

July 12, 1994.

---

Cathy S. Wright, Tony G. Miller, Deborah J. Long, Maynard, Cooper & Gale, P.C., Birmingham, AL, Steven T. Marshall, Maynard, Cooper & Gale, P.C., Montgomery, AL, for petitioner-appellant.

Beth Jackson Hughes, Alabama Atty. Gen., Montgomery, AL, for respondents-appellees.

Before KRAVITCH, EDMONDSON and COX, Circuit Judges.

EDMONDSON, Circuit Judge:

In this death penalty case, defendant Willie Clisby appeals the district court's denial of his ineffective assistance of counsel claim, brought under 28 U.S.C. § 2254. *See Strick-land v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The case involves a brutal murder committed by a person who had killed before. The detailed facts are set out in two earlier opinions. *See Clisby v. Jones,* 907 F.2d 1047 (11th Cir.) (per curiam) *vacated, reh'g, en banc, granted,* 920 F.2d 720 (11th Cir.1990), and *Clisby v. Jones,* 960 F.2d 925 (11th Cir.1992) (en banc) (*Clisby I*). Clisby mainly argues that his counsel was constitutionally ineffective at sentencing for not obtaining additional testimony from mental health experts.

Defense counsel did attempt to win the appointment of psychiatric assistance at Clisby's first sentencing; he argued that Clisby's ability to present mitigating evidence was impaired by the sentencing court's refusal to grant access to mental experts. The judge, noting that Clisby had been found competent and free of psychosis before trial, refused to appoint a psychiatric expert and sentenced Clisby to death.

On remand after direct appeal, the sentencing court did appoint a mental health expert, Dr. John Callahan. After interviewing Clisby, Callahan testified that he was unable to determine any disorder other than "possibly anti-social personality disorder." Callahan also recounted Clisby's view that drugs and alcohol caused his mental problems. Callahan offered little in the way of mitigating evidence. The judge sentenced Clisby to death for a second time.

Following a second round of remands, *see Ex Parte Clisby,* 456 So.2d 105 (Ala.1984), and denial of relief in state coram nobis proceedings, Clisby sought federal habeas relief. In a 1988 hearing before the district court, Clisby's new expert, Dr. Beidleman, testified that Clisby suffered from three problems: (1) antisocial personality disorder; (2) "borderline intellectual functioning," (IQ in the range of 80–86); and (3) chronic drug and alcohol abuse. These three problems, according to Beidleman, combined in a "synergistic" way to make Clisby dangerously impulsive.

Dr. Beidleman criticized Dr. Callahan's methodology and his failure to report on Clisby's intelligence level. But, Beidleman admitted to reaching "much the same result"

as Callahan. Clisby was granted relief under *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), but we reversed in *Clisby I.*

On remand, the district court held an evidentiary hearing on Clisby's ineffectiveness claims. The court concluded that Clisby failed to satisfy *Strickland v. Washington*'s first element—unreasonable performance. 466 U.S. at 688–91, 104 S.Ct. at 2064–66. But the district court, out of an abundance of caution, went on to consider *Strickland*'s prejudice element, concluding that Beidleman's testimony, if presented, would have changed the result. Relying chiefly on this prejudice finding, Clisby appeals.[1] We exercise plenary review. *Rogers v. Zant,* 13 F.3d 384, 386 (11th Cir.1994).

Clisby argues that counsel was constitutionally ineffective for failing to present expert testimony in addition to Dr. Callahan's testimony at sentencing. Because Callahan provided no beneficial testimony, Clisby argues, counsel should have looked for or insisted on the appointment of *another* expert. Although we limit our discussion to prejudice, we do accept the district court's finding and conclusion that defense counsel performed reasonably in this case.

Petitioners alleging ineffective assistance in death penalty cases bear the burden of showing prejudice:

> the question is whether there is a reasonable probability that, absent the errors, the sentencer—including an appellate court, to the extent it independently reweighs the evidence—would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.

*Strickland,* 466 U.S. at 695, 104 S.Ct. at 2069; *see also id.* at 691–94, 104 S.Ct. at 2066–68. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. at 2068.

When counsel performs reasonably, we doubt that prejudice can exist within the meaning of *Strickland. See id.* at 694, 104 S.Ct. at 2068 (prejudice shown by "a reasonable probability that, *but for counsel's unprofessional errors,* the result of the proceeding would have been different") (emphasis added). But, even if we were to assume for the sake of argument that counsel performed *un*reasonably in this case, we could not conclude that Clisby was prejudiced.

The weakness of Clisby's argument is apparent when we examine the evidence considered so crucial by Clisby and his expert: Clisby's low IQ and alcohol and drug abuse. First, Beidleman conceded that Clisby is not even mildly retarded. Second, counsel knew that Clisby had used drugs and alcohol; but, as a tactical matter, counsel specifically avoided relying on this evidence before the jury. Precedents show that many lawyers justifiably fear introducing evidence of alcohol and drug use. *See, e.g., Rogers,* 13 F.3d at 386–88; *White v. Singletary,* 972 F.2d 1218, 1225–26 (11th Cir.1992). Here, however, Callahan *did* eventually testify before the sentencing judge about Clisby's drug and alcohol use. Given the nature of Beidleman's testimony overall, it is little wonder that he also admitted to reaching "much the same result" as Callahan.

Clisby argues that Beidleman's "synergy" theory changes the equation. We disagree. In this case, the sentencing judge heard Callahan testify about Clisby's antisocial personality; Clisby testified, giving the judge an opportunity to gauge roughly his intelligence; and finally, the judge knew that Clisby had used alcohol and drugs. Sentencing courts need no experts to explain that "antisocial" people—people who by common definition have little respect for social norms or the rights of others—tend to misbehave if they abuse drugs and alcohol.[2] Nor must an ex-

---

1. Clisby raises other arguments in this appeal. He claims to have suffered from government-imposed ineffective assistance of counsel. *See Strickland,* 466 U.S. at 686, 104 S.Ct. at 2063. Clisby faults counsel's performance in areas unrelated to expert evidence. Clisby also argues that he should have been permitted to argue several other instances of allegedly ineffective assistance, not raised in his original habeas petition. These arguments are meritless.

2. It has been estimated that 91% of the "criminal element" are "antisocial" personality types. *Eddings v. Oklahoma,* 455 U.S. 104, 126–27 n. 8, 102 S.Ct. 869, 883 n. 8, 71 L.Ed.2d 1 (1982) (Burger, C.J., dissenting, joined by White, Blackmun, and Rehnquist). And, we think that most

pert explain that less intelligent people sometimes make bad decisions.[3]

Thus, even if Dr. Beidleman's testimony had been presented, there is no reasonable probability that the outcome would have changed; that is, our confidence that the death penalty would still have been imposed is in no way undermined. *See Strickland,* 466 U.S. at 694–96, 104 S.Ct. at 2068–69. In death penalty cases, *Strickland*'s prejudice inquiry is no sanitary, academic exercise—we are aware that, in reality, some cases almost certainly cannot be won by defendants. *Strickland* and several of our cases reflect the reality of death penalty litigation: sometimes the *best* lawyering, not just reasonable lawyering, cannot convince the sentencer to overlook the facts of a brutal murder—or, even, a less brutal murder for which there is strong evidence of guilt in fact. *Id.* at 696, 104 S.Ct. at 2069; *see also Thompson v. Wainwright,* 787 F.2d 1447, 1453 (11th Cir. 1986) ("Nothing [the lawyer] could have presented would have rebutted the testimony concerning Thompson's participation in the brutal torture murder."); *Daugherty v. Dugger,* 839 F.2d 1426, 1432 (11th Cir.1988) ("given the severity of the aggravating circumstances," failure to present psychiatric testimony was not prejudicial).

Clisby had killed before. He killed his victim in this case brutally with an axe, in the victim's own house. He argues that the sentencer should have been told that Clisby was unintelligent—but not retarded and not incompetent to stand trial—and that his "antisocial" personality was made worse by his drug and alcohol abuse. Given the aggravating and mitigating factors, nothing Clisby has put forth undermines our confidence in the outcome of his sentencing proceeding.

Clisby has failed to show us that he suffered prejudice, even *if* we were to assume inadequate performance on the part of his defense counsel.

The denial of relief is AFFIRMED.

KRAVITCH, Circuit Judge, specially concurring:

I concur in the result.

---

judges view drug and alcohol abuse as highly predictive of a propensity for criminal activity. *Cf.* U.S. Sentencing Guideline § 5H1.4 ("Substance abuse is highly correlated to an increased propensity to commit crime."). But, we doubt that many sentencers view substance abuse as a strong mitigating factor. *Cf., Rogers,* 13 F.3d at 388 (noting reasonableness of lawyers' fear that defendant's voluntary drug and alcohol use could be "perceived by the jury as *aggravating* instead of mitigating") (emphasis in original).

**3.** In addition, Beidleman's testimony likely would have been disputed if it had been offered

at sentencing. As we see the record, Beidleman's testimony would have helped Clisby not at all: the State's experts (Dr. Poythress and Dr. McClaren) *generally agreed* with Beidleman's conclusions (thus undercutting the significance of his testimony), while offering important criticisms. For example, Dr. Poythress testified that an "antisocial" person such as Clisby is not necessarily *unable* to control himself—nonconformance may be a matter of "choice" or "preference;" Dr. McClaren pointed to several facts indicating that Clisby acted quite deliberately on the night of the murder.