[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-12623
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 20, 2011
JOHN LEY
CLERK

D.C. Docket Nos. 1:08-cv-01497-ODE,
1:03-cr-00493-ODE-AJB-26

LUIS EDUARDO PEREZ,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(July 20, 2011)

Before HULL, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Luis Perez, a federal prisoner proceeding *pro se*, appeals the district court's

denial of his 28 U.S.C. § 2255 motion to vacate sentence. We granted a certificate

of appealability on one issue: "Whether the district court erred in finding that counsel was not ineffective for failing to call weigh station officials to testify in Perez's defense?" For the reasons stated below, we affirm.

I.

Perez, a federal prisoner serving a 135-month sentence for conspiracy to distribute marijuana, filed a *pro se* § 2255 motion to vacate his sentence. In his motion, Perez asserted that he had received ineffective assistance from his defense counsel. Among other things, he argued that his counsel was ineffective for failing to interview and subpoena officials from two weigh stations who had searched his truck with drug-sniffing dogs and had not found any marijuana inside.

At Perez's trial, the government presented evidence that he had transported marijuana for a drug trafficking organization headed by Ramon Alvarez-Sanchez ("Ramon"). A co-conspirator, Nicholas Garcia, testified that Perez worked as a truck driver for Ramon. On one occasion, Ramon instructed Garcia to pick up Perez at an airport in Texas so that Perez could drive a load of marijuana from Texas to Atlanta. According to Garcia, Ramon never flew in truck drivers for legitimate loads. After Perez left in the truck, Ramon called Garcia and informed him that Perez had been stopped by the Department of Transportation due to a

problem with the truck's paperwork. Later, Perez called Garcia and explained that the problem had been cleared up and that he was just going to have to pay a fine. The load of marijuana was delivered to Ramon in Atlanta.

Special Agent Robert Murphy of the Drug Enforcement Administration testified that law enforcement intercepted a series of telephone calls between Ramon and Perez. On June 17, 2003, Perez called Ramon and stated that he had been stopped at a weigh station because of a discrepancy in his paperwork. Perez exclaimed, "these people here at the scale caught me . . . ." Twenty minutes later, Perez told Ramon that he would just have to pay a $500 fine. Ramon emphasized that the important thing was for Perez to get out of there.

Special Agent Murphy explained that an individual known as "Primo-2" was following Perez's truck in a trail car. On the evening of June 17, 2003, law enforcement intercepted a telephone call between Primo-2 and Ramon. During that call, Primo-2 informed Ramon that Perez's truck had been stopped at a second weigh station. Primo-2 explained that the first weigh station had faxed information about Perez's truck to the next station. When Perez arrived at the second weigh station, there were officers with dogs standing by. The officers searched Perez's truck, but they did not find anything and Perez was allowed to leave. Special Agent Murphy interpreted Primo-2's statements about the dogs to

3

mean that there were drug-sniffing dogs at the weigh station but that they had not been used in the search of Perez's truck. He acknowledged, however, that this was just his own interpretation of the call. Law enforcement never seized the June 17 load of marijuana.

Perez testified in his own defense. He asserted that he was a legitimate truck driver for Logistics Express, a company owned by Ramon, and had no knowledge of any drug-trafficking activities. On June 17, 2003, shortly after he started working for Ramon, he was told to drive a load of cabbages from Texas to New York. The truck was already loaded by the time that Perez arrived. Perez testified that he was stopped at a weigh station in Louisiana because the ICC number on his paperwork did not match the ICC number on his truck. The officers searched his truck but did not find any contraband, and he was allowed to leave after paying a $500 fine. When he reached the next weigh station, there were officers with dogs standing by. The officers searched his truck with the aid of the dogs, but did not find anything. After two hours, Perez was permitted to leave the second weigh station.

During closing arguments, defense counsel questioned why none of the investigators went to the second weigh station to find out what happened during the search of Perez's truck. Counsel observed that the government had not called any of

the weigh station personnel to testify. In rebuttal, the prosecutor observed that Perez also had the power of subpoena, and could have presented additional witnesses if he believed that their testimony would have been helpful to his defense. The jury returned a verdict of guilty.

The district court denied Perez's § 2255 motion without holding an evidentiary hearing. The district court concluded that counsel was not ineffective for failing to present testimony from the weigh station officials. The court observed that the officials "obviously did not discover marijuana in Perez's truck, so their testimony would have added nothing in that regard." Although testimony that drug-sniffing dogs were used in the search would have helped Perez's defense, the court observed that Perez had failed to come forward with a proffer that any such search occurred. The court explained that it was not unreasonable for counsel to avoid calling the officials because they might well have testified that the drug dogs were not used during the search, as Agent Murphy had suggested in his testimony. The court also observed that counsel was able to suggest during closing arguments that the government did not call the weigh station officials because it had something to hide. The district court concluded that counsel's trial strategy was not so unreasonable as to be constitutionally deficient.

II.

An ineffective-assistance-of-counsel claim presents a mixed question of law and fact that we review *de novo*. *Payne v. United States*, 566 F.3d 1276, 1277 (11th Cir. 2009). To prevail on an ineffective-assistance claim, a defendant must show both that his counsel's performance was deficient, and that this deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). To establish deficient performance, a defendant must show that counsel acted unreasonably in light of prevailing professional norms. *Id.* at 688, 104 S.Ct. at 2065. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and a reviewing court must make every effort "to eliminate the distorting effects of hindsight." *Id.* at 689, 104 S.Ct. at 2065. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

In reviewing whether counsel's performance was deficient, we give particular deference to counsel's decisions on matters of trial strategy. *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994*)*; *see also Strickland*, 466 U.S. at 690, 104

S.Ct. at 2066 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengable."). "Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess." *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (*en banc*). "'The mere fact that other witnesses might have been available or that other testimony might have been elicited from those who testified is not a sufficient ground to prove ineffectiveness of counsel.'" *Id.* at 1514 (quoting *Foster v. Dugger*, 823 F.2d 402, 406 (11th Cir. 1987)).

Counsel's decisions are entitled to less deference if they are not the result of informed investigation. "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690-91, 104 S.Ct. at 2066. "In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.* at 691, 104 S.Ct. at 2066. The reasonable investigation standard "reflects the reality that lawyers do not enjoy the benefit of endless time, energy or financial resources." *Rogers*, 13 F.3d at 387.

After review of the record and the parties' briefs, we affirm.  Because the district court did not hold an evidentiary hearing, we view the factual allegations in the light most favorable to Perez, and assume that counsel did not investigate what the weigh station officials' testimony would be.  *See Downs v. McNeil*, 520 F.3d 1311, 1313 n.3 (11th Cir. 2008).  Even if counsel did not investigate the weigh station officials, his failure to do so did not amount to deficient performance.  Counsel knew that the intercepted telephone calls and the testimony of Garcia and Special Agent Murphy would show that Perez's truck had been searched and that no marijuana had been found.  Therefore, there was no need to call the weigh station officials to corroborate that fact.  Moreover, there were other sources of evidence showing that the officials used drug-sniffing dogs to search Perez's truck.  During one of the intercepted calls, Primo-2 stated that he had seen dogs at the weigh station, and Perez himself testified that the weigh station officials had used dogs to search his truck.  In addition, counsel was able to suggest during his closing argument that the government had not called the weigh station officials to testify because their testimony would have been favorable to Perez's case.

Looking at this case with the benefit of hindsight, it might have been a good idea for counsel to call the weigh station officials to corroborate Perez's testimony

about the drug-sniffing dogs, as it appears that the jury had doubts about Perez's credibility. Prior to the trial, however, counsel could reasonably have concluded that there was no need to interview the weigh station officials because there already was plenty of evidence about what happened at the weigh station. *See Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.").

Perez has not overcome the "strong presumption" that his counsel's conduct fell "within the wide range of reasonable professional assistance," and, therefore, he has failed to establish deficient performance. *See Strickkland*, 466 U.S. at 689, 104 S.Ct. at 2065. In light of the foregoing, it is unnecessary for us to address whether Perez can establish prejudice. *See id.* at 697, 104 S.Ct. at 2069 (explaining that a court need not address the prejudice prong if the defendant has not established deficient performance, and vice versa).

Finally, the district court did not abuse its discretion by not holding an evidentiary hearing in this case. *See McNair v. Campbell*, 416 F.3d 1291, 1297 (11th Cir. 2005) ("A district court's decision to grant or deny an evidentiary hearing is reviewed for an abuse of discretion."). An evidentiary hearing is not

9

required if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Here, even when the facts are viewed in the light most favorable to Perez, he has not established that his counsel's performance was deficient. Thus, there was no need for the district court to hold an evidentiary hearing. We affirm the denial of Perez's § 2255 motion.

**AFFIRMED.**