Filed 3/19/14  P. v. Del Valle CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>JUAN ANTONIO ORTEGA DEL VALLE,<br><br>　　　Defendant and Appellant. | H037785<br>(Santa Cruz County<br>Super. Ct. No. F19540) |

Defendant Juan Antonio Ortega Del Valle pleaded guilty to several charges of sexually molesting the (then) seven-year-old daughter of his fiancée, in exchange for a stipulated sentence of 14 years in state prison.  Prior to sentencing, Del Valle unsuccessfully moved to withdraw his plea because, among other reasons, private counsel who represented him at the time of the plea agreement failed to adequately investigate his defenses and failed to obtain exculpatory evidence consisting of the video of the victim's sexual assault response team (SART) exam.

After obtaining a certificate of probable cause, Del Valle appeals from the trial court's denial of his motion to withdraw his plea and the trial court's denial of a motion to continue the hearing on his motion to withdraw.

We find no merit in any of Del Valle's arguments and will affirm.

# I.    FACTUAL AND PROCEDURAL BACKGROUND[1]

On July 22, 2010, at approximately 1:00 p.m., Watsonville Police Officers Scott Mead and Corporal Fuentez were dispatched to Dominican Hospital in response to a report of child molestation.  At the hospital, the officers met the victim.  The victim's mother, her aunt, her grandmother and her (then) 14-year-old sister were also at the hospital.  Mead and Fuentez took the victim and her mother into a private room and spoke first to the mother.

The mother told the officers that she lived in a three-bedroom apartment with her two daughters and her fiancé, Del Valle.  Del Valle and the mother planned to be married within the next couple of weeks.

During the week, the mother would leave for work at 8:00 a.m., and either Del Valle or the grandmother would care for the children.  Sometimes, the victim was home alone with Del Valle.

The mother said on July 20, 2010, the grandmother called her and said she should take her children to work rather than leaving them at home.  When she asked why, the grandmother refused to explain, but sounded worried and said, "You just need to take them."

The following morning, the mother asked the victim and her sister why the grandmother was telling her not to leave them with Del Valle.  The victim told her mother about an incident that occurred the day before.  The victim was on the couch watching TV when Del Valle picked her up, put her on his lap, and put his finger into her vagina.  The victim said that since her summer vacation started, Del Valle did this every day after the mother left for work.  The mother took both children to work with her that day.

---

[1] As Del Valle pleaded guilty, we derive the facts from the transcript of the preliminary hearing.

Later that night, at the apartment, the mother confronted Del Valle about what the victim had told her that morning. Del Valle said the victim lied and that he never touched her. Del Valle left the apartment that evening. The next day, the victim's aunt made an appointment for the victim to see a doctor.

The officers next talked to the victim, who told them that on the morning of July 20, 2010, she was sitting on the couch watching television after her mother left for work. Del Valle picked her up, and laid her down next to him on the couch with her head on his chest. He inserted his finger "down here" and pointed at her vagina as she said this to the officers. The victim said Del Valle put his finger in her vagina two times and it "hurt inside up to her stomach." The first time Del Valle inserted his finger, the victim told him it hurt. Del Valle pulled down her underwear to check and put his finger into her vagina again. She again told him it hurt, and Del Valle told her to take a shower.

The victim also told the officers that on July 13, 2010, her mother took her sister to work with her, leaving the victim home alone with Del Valle. Painters were at the building that day. Del Valle again picked her up and laid her down next to him before touching her vagina "soft[ly]" with his fingers underneath her underwear.

The victim said that since her summer break started in May, Del Valle would usually do this to her every morning after her mother left for work. On the other occasions, Del Valle had not touched her "as hard" or "it didn't hurt."

Mead and Fuentez next talked to the grandmother. Because the grandmother did not speak English, the victim's aunt acted as a translator. The grandmother said she babysat the victim and her sister on July 13, 2010, and the victim complained that her vagina hurt. The victim told her Del Valle touched her vagina. The grandmother put the victim on the toilet and inspected her vagina, which looked red and irritated. The grandmother was concerned, but did not say or do anything because "she doesn't like to get involved in [the mother's] live [*sic*]."

3

The following week, on July 20, 2010, the grandmother babysat the victim. The victim told her grandmother that Del Valle had touched her vagina again, and it hurt. The grandmother again inspected the victim's vagina and noticed it was red and irritated. There also appeared to be scratches on its interior. The grandmother called the mother and told her not to leave the children home alone with Del Valle.

Mead and Fuentez relayed the information they obtained from the victim, the mother and the grandmother to Watsonville Police Detective Albert Lopez, a Spanish-speaking officer. On July 23, 2010, Lopez spoke to Del Valle on the telephone. Del Valle said he knew the police wanted to talk to him and went to the police department. Lopez read Del Valle his *Miranda*[2] rights, which he waived.

Del Valle told Lopez he had lived with the mother (his fiancée) and her two daughters for three or four years. Lopez asked Del Valle what happened the morning of July 20, 2010. Del Valle admitted touching the victim that morning when the mother was at work. He explained he and the victim were in the living room when she told him she had pain in her vagina. Del Valle put the victim on the couch and removed her pajama pants and her underwear. He noticed her vagina looked red, so he used both hands to spread open her labia. Del Valle inserted his right index finger into her vagina and moved it around for about five to seven minutes to try to find the source of her pain.

Del Valle determined the source of the victim's pain was toward the lower part inside her vagina because when he touched her there, she made a sound indicating it hurt. He offered to put some cream on her vagina to relieve the pain, but the victim refused. He then told her to take a shower instead, which she did. Del Valle never told the victim's mother or anyone else the victim complained to him about pain in her private parts or that he touched her vagina to see why it hurt.

---

[2] *Miranda v. Arizona* (1966) 384 U.S. 436.

4

Lopez explained to Del Valle that a SART nurse examined the victim and there was physical evidence of trauma inside her vagina. Lopez asked how that happened and suggested Del Valle may have pressed too hard or that his fingernails scratched her. Del Valle said he was not sure how the trauma occurred, but denied touching the victim on any other occasion.

On August 10, 2010, the mother contacted Lopez and said the victim admitted she had lied about the molestation because she did not want Del Valle and her mother to get married. The mother said she asked the victim why she did not tell her that Del Valle touched her, and the victim replied, "I don't know, Mommy." The mother wanted Lopez to interview the victim so she could tell him in person that she lied, and the mother believed Del Valle was "unjustly" in jail.

Several days later, Lopez conducted a tape recorded interview of the victim at the police department. After asking questions to determine if she knew the difference between the truth and a lie, Lopez asked if she knew why she was there. The victim initially said she did not know, but then said she was there to tell him that she had lied about Del Valle touching her because she did not want him to marry her mother. When Lopez asked why she did not want her mother to get married to Del Valle, the victim could not answer. Later in the interview, she said Del Valle was strict with her at times and made her do her schoolwork.

Lopez asked the victim about her telling her grandmother that her private part hurt. The victim said she recalled saying that to her grandmother. Without solicitation by Lopez, she then explained she was on the living room couch when Del Valle joined her and put her on top of him so her back was on his chest. With his left hand, he started rubbing her vagina up and down "real hard." The victim went over to the couch in the interview room and demonstrated the act to Lopez by lying down on the couch, and rubbing between her legs with one hand. As she did that, the victim told Lopez that was how Del Valle did it.

5

The victim said after Del Valle touched her she showered and that her privates did not hurt any more. During the interview, the victim twice talked about the incident in detail and her explanations were "pretty much the same way [Del Valle] had told [Lopez]." However, each time after the victim's detailed explanation of what happened, Lopez asked her if that is what happened and each time, the victim answered "no, I lied about that." However, the victim did not tell Lopez that she lied to her grandmother when she complained about her vagina hurting. She also did not tell Lopez that, before Del Valle rubbed her vagina, she mentioned to him that her vagina hurt or asked him to look at it.

A few days later, Lopez interviewed the mother. The mother said that she spoke to the victim at home around 10:00 p.m. on July 21, 2010. The victim told her Del Valle touched her in her private area, her vagina. Del Valle came home with the victim's sister, and overheard the mother talking to the victim. The mother confronted Del Valle in front of the children. Del Valle said the victim was lying and denied touching her. He did not claim that the victim complained to him of pain in her vagina and that was why he touched her. The mother told Del Valle to get out of the house and take his belongings with him.

Before leaving, Del Valle went to the victim in the kitchen and asked her why she lied. Once Del Valle had left, the mother tried to talk to the victim, but she refused to speak, climbing into her bed and pulling the blankets over her head. The mother did not call the police, because she did not believe Del Valle had touched the victim. There were so many other occasions he could have touched her, and it would be "dumb" for him to do so since the grandmother had recently moved into the apartment.

The mother also further described the circumstances of the victim recanting. The mother initially did not tell the victim Del Valle had been arrested, but instead said he had gone to visit his family in Mexico. About a week later, however, the victim asked when Del Valle could fix her bicycle seat. The mother responded that because the victim

6

had said Del Valle had touched her, he was in jail and would not be getting out. The victim then said she had lied about Del Valle touching her.

Del Valle was charged by information with three counts of committing a lewd or lascivious act on a child under the age of 14 (Pen. Code, § 288, subd. (a))[3] as well as two counts of sexual penetration of a child under the age of 10 (§ 288.7, subd. (b)). The information further alleged each count was a serious felony under section 1192.7, subdivision (c) and a violent felony under section 667.5, subdivision (c).

Pursuant to the terms of a plea agreement, the district attorney amended the information to charge Del Valle with one count of committing a forcible lewd act on a child under the age of 14 (§ 288, subd. (b)(1), count 1) and three counts of committing a lewd or lascivious act on a child under the age of 14 (*id*., subd. (a), counts 2, 3 & 4). The amended information further alleged: (1) Del Valle committed count 1 by means of force, violence, duress, menace and fear of immediate and unlawful bodily injury (§ 1203.066, subd. (a)(1)); and (2) as to all four counts, the victim was under age 14 and Del Valle had substantial sexual conduct with her (*id*., subd. (a)(8)).

Del Valle pleaded guilty to the amended information in exchange for a stipulated sentence of 14 years. Prior to sentencing, Del Valle made an oral and written motion to withdraw his guilty pleas, as well as a motion to compel discovery of, among other things, a copy of the colposcopic exam photos and film taken in conjunction with the victim's SART exam. The motion to withdraw was based on the following pertinent[4] claims: (1) Del Valle's prior counsel was incompetent for failing to properly investigate and prepare a valid defense; and (2) prior counsel failed to obtain necessary exculpatory

---

[3] Further statutory references are to the Penal Code.

[4] Del Valle's motion asserted other grounds, such as prior counsel's failure to investigate whether the grandmother was opposed to his impending marriage to the victim's mother and thus caused the victim to fabricate the claim of molestation. He does not reassert those grounds on appeal and we do not discuss them further.

evidence from the prosecution, such as video of the victim's colposcopic exam. Among the material supporting the motion is an unsigned document, not made under penalty of perjury, from a forensic nurse consultant. In this writing, the forensic nurse stated the photo documentation from the victim's SART exam is important to the defense because the SART nurse documented an abrasion above the victim's urethra which is an uncommon injury in a sexual abuse case, and further, the victim reported itching in the area of the abrasion.

At a hearing on November 4, 2011, the trial court ordered the prosecutor to provide the defense with a copy of any existing video of the SART exam, and set a hearing on the motion to withdraw the guilty plea for December 16, 2011. At the December 16 hearing, defense counsel asked for a continuance because he had just learned the video of the SART exam was in the prosecutor's office. The prosecutor provided the court with a copy of an e-mail sent to defense counsel on November 22 advising him that the video of the SART exam had been located and was being copied for him. In denying the motion for continuance, the trial court made the following remarks: "I just don't find that Counsel is--has acted as expeditiously as is appropriate. This motion [to withdraw the plea] is six months old, and the Court--when I ordered [the SART exam evidence] to be turned over before, I observed that I don't think it matters. Your SART nurse has already formed an opinion saying there could be other reasons for this kind of a[n] observation, if in fact the observation is there, but none of this is persuasive given that Mr. Del Valle gave a statement where he said, yes, he did insert his fingers in the little girl's vagina. So what is shown on the SART films, if anything, in this Court's opinion, was not at all relevant to the issues, but I've given you a very gracious number of continuances, and I find it very difficult if you receive[d] notice on November 22nd of the one thing that you consider to be so very, very important, and then you didn't follow up at all, and today is December [16]th."

8

The trial court denied the motion to withdraw the plea, noting that the motion was not supported by admissible evidence. However, the court ruled that even if the proffered evidence were admissible, it would be insufficient to support granting the motion. Del Valle filed a motion to reconsider, which was denied by the trial court at the December 20, 2011 sentencing hearing.

The trial court sentenced Del Valle to prison for a total term of 14 years, consisting of an upper term of eight years for committing a forcible lewd act upon a child, plus three consecutive two-year terms (one-third the midterm) for each count of committing a lewd act upon a child.

Del Valle timely appealed, and his motion for a certificate of probable cause was granted.

## II.   DISCUSSION

### A.   *Motion to withdraw plea*

Del Valle argues the trial court erred in denying his motion to withdraw his plea where his prior counsel provided ineffective assistance by failing to properly investigate his case, obtain video of the victim's colposcopic exam or consult with a medical expert regarding his defense.

#### 1.   *Scope and standard of review*

Section 1018 allows the trial court to grant a defendant's request to withdraw his or her plea of guilty or no contest "before judgment . . . for a good cause shown. . . ." "Mistake, ignorance or any other factor overcoming the exercise of free judgment is good cause for withdrawal of a guilty plea." (*People v. Cruz* (1974) 12 Cal.3d 562, 566.) In order to prevail on this request, the defendant must demonstrate the "good cause" referred to by a strong showing of clear and convincing evidence. (*Ibid.*)

"It is well settled that where ineffective assistance of counsel results in the defendant's decision to plead guilty, the defendant has suffered a constitutional violation giving rise to a claim for relief from the guilty plea." (*In re Alvernaz* (1992) 2 Cal.4th

924, 934.) "Plea bargaining and pleadings are critical stages in the criminal process at which a defendant is entitled, under both the Sixth Amendment to the federal Constitution and article I, section 15 of the California Constitution, to the effective assistance of legal counsel." (*In re Resendiz* (2001) 25 Cal.4th 230, 239.)

In *Hill v. Lockhart* (1985) 474 U.S. 52, the United States Supreme Court held that the two-part test pronounced in *Strickland v. Washington* (1984) 466 U.S. 668, with some modification of the second prong of that test, applies to challenges to guilty pleas based on claims of ineffective assistance of counsel. (*Hill v. Lockhart*, *supra*, at pp. 58-59.) Under this modified test, a defendant has the burden to prove by a preponderance of the evidence: (1) his or her counsel's representation fell below an objective standard of reasonableness under prevailing professional norms; and (2) he or she suffered prejudice from counsel's deficient performance, i.e., "there is a reasonable probability that, but for counsel's errors, he [or she] would not have pleaded guilty and would have insisted on going to trial." (*Id.* at p. 59; see also *In re Resendiz*, *supra*, 25 Cal.4th at pp. 239, 248-254.)

The standard for reviewing counsel's performance is highly deferential. (*Harrington v. Richter* (2011) __ U.S. __ [2011 U.S. LEXIS 912]; *People v. Holt* (1997) 15 Cal.4th 619, 703.) Trial counsel's performance must be evaluated based on his or her perspective at that time rather than having that performance viewed through "the distorting effects of hindsight." (*Strickland v. Washington*, *supra*, 466 U.S. at p. 689; see also *In re Andrews* (2002) 28 Cal.4th 1234, 1255.) In evaluating trial counsel's actions, "[a] court must indulge a strong presumption that counsel's acts were within the wide range of reasonable professional assistance." (*People v. Dennis* (1998) 17 Cal.4th 468, 541.)

With respect to the second prong, a defendant's claim that he or she would not have pleaded guilty had the defendant received effective assistance of counsel " 'must be corroborated independently by objective evidence.' " (*In re Resendiz*, *supra*, 25 Cal.4th

10

at p. 253, quoting *In re Alvernaz*, *supra*, 2 Cal.4th at p. 938.) "A defendant's statement to that effect is not sufficient. . . . [T]here must be some objective showing." (*In re Vargas* (2000) 83 Cal.App.4th 1125, 1140.) Factors relevant to this determination include: whether counsel actually and accurately communicated the offer; whether the defendant was amenable to a plea bargain; counsel's advice; and " 'the disparity between the terms of the proposed plea bargain and the probable consequences of proceeding to trial, as viewed at the time of the offer . . . .' " (*In re Resendiz*, *supra*, at p. 253.)

Although the *Strickland* standard contains two prongs, if it is easier to resolve a claim based on lack of prejudice alone, which will often be the case, that course should be followed. (*Strickland v. Washington*, *supra*, 466 U.S. at p. 697; *In re Alvernaz*, *supra*, 2 Cal.4th at p. 945.)

We review an order denying a motion to withdraw a plea for abuse of discretion, which abuse must be "clearly demonstrated" before we may reverse. (*People v. Superior Court* (*Giron*) (1974) 11 Cal.3d 793, 796.) Abuse of discretion is found only if the trial court has exercised its discretion in an arbitrary, capricious or patently absurd manner resulting in a manifest miscarriage of justice. (*People v. Shaw* (1998) 64 Cal.App.4th 492, 496.)

### 2. *Analysis*

Del Valle claims that prior counsel rendered ineffective assistance by failing: (1) to investigate and obtain the colposcopy photos and film taken of the victim during the SART exam, and (2) to consult with a medical expert regarding the photos and film prior to advising Del Valle to plead guilty.

"[C]ompetent counsel should realistically examine the case, the evidence, and the issues, and pursue those avenues of defense that, to their best and reasonable professional judgment, seem appropriate under the circumstances." (*People v. Freeman* (1994) 8 Cal.4th 450, 509.) "To establish that investigative omissions were constitutionally ineffective assistance, defendant must show at the outset that 'counsel knew or should

11

have known' further investigation might turn up materially favorable evidence." (*People v. Gonzalez* (1990) 51 Cal.3d 1179, 1244.) Since "the range of constitutionally adequate assistance is broad, . . . a court must accord presumptive deference to counsel's choices about how to allocate available time and resources in his or her client's behalf." (*Id*. at p. 1252.) "Counsel may make reasonable and informed decisions about how far to pursue particular lines of investigation. Strategic choices based upon reasonable investigation are not incompetent simply because the investigation was less than exhaustive." (*Ibid*.)

Obviously, part of counsel's "strategy" includes decisions not to undertake particular investigations; what matters under *Strickland* is whether the decision not to make the investigation in question was reasonable. (*Rogers v. Zant* (11th Cir. 1994) 13 F.3d 384, 387, citing *Strickland v. Washington*, *supra*, 466 U.S. at p. 691.) The decision to investigate or not must take into account the defendant's own statements or actions, including informed strategic choices made by the defendant, and informed strategic choices made on the basis of information supplied by the defendant. (*In re Andrews*, *supra*, 28 Cal.4th at p. 1255.) "For example, when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether. And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." (*Strickland v. Washington*, *supra*, 466 U.S. at p. 691.)

On this record, there is no showing that Del Valle's prior counsel should have reasonably suspected that obtaining the colposcopy photos and film would have revealed one or more viable defenses to the charges let alone "materially favorable evidence." (*People v. Gonzalez, supra*, 51 Cal.3d at p. 1244.) Del Valle's defense was that he lacked sexual intent when he touched the victim's vagina and that defense was predicated on the victim complaining to him about preexisting pain in her vagina. However, even if the

12

colposcopy result showed an injury inconsistent with molestation, Del Valle fails to show how that result would shed any light on the question of intent, let alone sufficiently bolster his case to the extent that it would be reasonable for him to withdraw his plea. In the face of all the evidence, particularly Del Valle's devastating admission, further investigation would have been futile.

Del Valle told Lopez that he not only touched the victim's vagina, he spread her labia and inserted his finger into her vagina, feeling around for five to seven minutes. Assuming that the victim did have an injury or some irritation and did complain to Del Valle that she was experiencing pain or discomfort and that the colposcopic evidence would have shown an injury or irritation that may have preexisted the incident, the duration and intrusiveness of Del Valle's examination and probing is inexplicable. Absent some obvious medical emergency, such as uncontrolled bleeding, we can conceive of no reason for an adult[5] to insert his or her finger into a seven-year-old's vagina for any length of time, let alone five to seven minutes.

It is not just Del Valle's admission that he touched the victim in this manner, however, which renders the colposcopic evidence irrelevant. Del Valle also never told the victim's mother or grandmother that the victim complained to him of pain in her vagina, or that he stuck his finger in her vagina to try to find out why it hurt. When interviewed by Lopez, he initially denied touching the victim at all. It was only after Lopez said the SART examination revealed injuries to her vagina that Del Valle admitted putting his finger into her vagina. If Del Valle were simply acting as a concerned adult and had no sexual intent, why not tell the mother or grandmother that the victim had said

---

[5] Other than a medical professional, of course, who may need to do so in order to diagnose or treat a patient. There is nothing in the record to suggest that Del Valle has any medical training whatsoever.

her vagina hurt, but he was unable to determine the source of that pain?  Why deny to Lopez having touched her, if his intentions were purely clinical?

The SART exam results, as well as by the victim's detailed description of the incident to Mead and Fuentez, further buttressed Del Valle's admission.  The victim said Del Valle put her on the couch with her head on his chest, and put his finger "down there," pointing at her vagina.  When she complained that it hurt, Del Valle pulled down her underwear to "check" and put his finger inside her again.  The victim said Del Valle inserted his finger into her vagina, twice, "so hard" and "too deep" that it "hurt inside up to [her] stomach."  She also told the officers when she was home from school for summer break, Del Valle usually did this to her every morning after her mother left for work.

The grandmother also corroborated the victim's story.  She told Mead and Fuentez that on July 13, 2010, the victim complained that her vagina hurt and that Del Valle had touched her vagina.  When the grandmother sat the victim on the toilet, she saw the victim's vagina was red and irritated.  The following week, on July 20, 2010, the victim told her grandmother that Del Valle had touched her vagina again and it hurt.  This time, the grandmother examined the interior of the victim's vagina where she saw it was scratched and irritated.

Faced with this seemingly insurmountable evidence, Del Valle argues the value of the colposcopic evidence was paramount because the victim subsequently "recanted" her statement to police that he inserted his finger into her vagina.  This argument, however, fails because even if the victim's recanting could be seen as credible, it ignores Del Valle's own admission.

The supposed recanting is itself of dubious value.  Though the victim did tell Lopez she lied about being touched, in the course of that interview, she described in detail how Del Valle laid her down on his chest and stuck his finger(s) in her vagina.

Furthermore, as the trial court pointed out, Del Valle failed to provide any admissible evidence to support his contentions below.  The declaration by a forensic

14

nurse consultant, suggesting the SART exam revealed an injury above the victim's urethra, a "very uncommon area for injuries related to sexual abuse," was unsigned and does not indicate it was made under penalty of perjury. The document does not speak to the issue of intent, nor does it describe how the colposcopic examination would provide any evidence on that element of the crime. As discussed above, it is irrelevant whether the victim might have had some preexisting injury or irritation in or near her vagina.

Finally, Del Valle cannot establish prejudice resulting from prior counsel's conduct. Had he gone to trial, Del Valle would have faced the possibility of receiving two or more terms of 15 years to life in prison. Instead, he pleaded guilty to an amended information and received a stipulated sentence of 14 years. Del Valle's claim that he would have gone to trial if only his counsel had obtained the colposcopy evidence and retained a medical expert to testify about it is not independently corroborated "by objective evidence" sufficient to undermine judicial confidence in his decision to accept the plea bargain. (*In re Resendiz*, *supra*, 25 Cal.4th at pp. 253-254.) The record does not show how the colposcopy evidence and a medical consultant could establish Del Valle had no sexual intent when he inserted his finger into the seven-year-old's vagina and felt around for five to seven minutes.

By pleading guilty, Del Valle avoided the very real possibility of two or more 15-year-to-life sentences, receiving instead a determinate sentence of 14 years. We find the trial court did not abuse its discretion in denying Del Valle's motion to withdraw his guilty plea.

*B.        Motion for continuance*[6]

Del Valle also contends the trial court abused its discretion in denying his motion for continuance to secure:  (1) the colposcopy photos and film and an expert witness to review them; (2) prior counsel's attendance at the hearing or, alternatively, his declaration regarding his failure to obtain the colposcopy photos and film; and (3) an expert declaration that prior counsel rendered ineffective assistance of counsel.

"A continuance in a criminal case may be granted only for good cause.  (§ 1050, subd. (e).)  Whether good cause exists is a question for the trial court's discretion. [Citation.] . . .  While a showing of good cause requires that both counsel and the defendant demonstrate they have prepared for trial with due diligence [citation], the trial court may not exercise its discretion 'so as to deprive the defendant or his attorney of a reasonable opportunity to prepare.' " (*People v. Doolin* (2009) 45 Cal.4th 390, 450.)  "In reviewing the decision to deny a continuance, '[o]ne factor to consider is whether a continuance would be useful.' " (*People v. Mungia* (2008) 44 Cal.4th 1101, 1118.) "Absent a showing of an abuse of discretion and prejudice, the trial court's denial does not warrant reversal." (*People v. Doolin*, *supra*, at p. 450.)

We find no abuse of discretion by the trial court.  Defense counsel had not demonstrated due diligence in obtaining what it deemed critical evidence, and that evidence, even if it showed a preexisting injury or irritation in or near the victim's vagina, was of no value.  Del Valle's admission, corroborated by the physical evidence of

---

[6] Though Del Valle does not directly raise a claim of error based on a *Brady* (*Brady v. Maryland* (1963) 373 U.S. 83) violation, he asserts the prosecution should have produced the colposcopic exam evidence "proactively" and "sua sponte" under *Brady*.  In his opening brief, Del Valle "give[s] the Court advance notice that he will file a Request to Amend Appellant's Opening Brief as some of the transcripts are missing.  The transcripts from the *Brady* motion hearing on November 4, 2011 are not among the appellate record [*sic*].  These transcripts relate to one of the three issues [Del Valle] is arguing on appeal."  However, no request to augment the record to include these hearing transcripts was made.  Accordingly, we do not discuss the issue further.

injury to the interior of the victim's vagina, the victim's initial statements to Mead and Fuentez and her subsequent statements to Lopez, as well as the grandmother's statements to the officers, constituted insurmountable evidence. A further delay of proceedings to review the colposcopic photos and video, consult with the forensic nurse consultant and an expert attorney would not have been useful in any respect.

Moreover, just as he could not show prejudice from the denial of his motion to withdraw his plea, Del Valle does not show any prejudice as a result of the denial of the continuance. (*People v. Doolin*, *supra*, 45 Cal.4th at p. 450.) The evidence and declarations he was seeking would not have changed the trial court's decision with respect to his motion to withdraw his guilty plea. Consequently, the trial court did not abuse its discretion in denying his request for continuance.

**III.** **DISPOSITION**

The judgment is affirmed.

                                                _____

                                                               Premo, J.

WE CONCUR:

_____

                 Rushing, P.J.

_____

                  Elia, J.