**Mahmoud KRECHT, Movant,**

v.

**UNITED STATES of America, Respondent.**

**Case No. 09–81028–CIV.**

United States District Court, S.D. Florida.

Feb. 14, 2012.

Richard Francis Della Fera, Entin & Della Fera, Fort Lauderdale, FL, for Movant.

Lothrop Morris, United States Attorney's Office, West Palm Beach, FL, for Respondent.

### ORDER ADOPTING REPORT AND RECOMMENDATION

KENNETH L. RYSKAMP, District Judge.

THIS CAUSE comes before the Court pursuant to the report and recommendation of United States Magistrate Judge Jonathan Goodman, dated January 23, 2012 **[DE 49]**. No objections to the report and recommendation have been filed. The Court has reviewed the report and recommendation and has conducted a de novo review of the underlying record. It is hereby

ORDERED AND ADJUDGED that the report and recommendation is ADOPTED, AFFIRMED and APPROVED. Movant Mahmoud Krecht's 28 U.S.C. § 2255 motion to vacate, set aside, or correct sentence is GRANTED as to his safety valve claim. Movant shall be resentenced at a total offense level of 35. The resentencing shall be scheduled by separate order.

## REPORT AND RECOMMENDATIONS ON § 2255 MOTION

JONATHAN GOODMAN, United States Magistrate Judge.

This matter is before the Court on Mahmoud Krecht's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. Krecht is currently serving a 210–month sentence at the Federal Detention Center in Miami, Florida. The motion was initially filed *pro se* but Krecht subsequently obtained counsel. The Court has reviewed the motion (D.E. 1), the government's response (D.E. 10), Krecht's *pro se* reply and the supplemental reply filed by counsel (D.E. 17, 24), the Presentence Investigation Report (PSI) and addendum and objections thereto, the exhibits filed in connection with the motions in this case, and all pertinent portions of the underlying criminal case.[1]

With one exception, Krecht's motion does not generate grounds worthy of significant discussion. The one issue requiring comprehensive analysis—Krecht's claim that counsel was ineffective for failing to diligently pursue the so-called "safety valve" provision of the federal sentencing guidelines—must still be **rejected** on the present record because Krecht cannot establish the requisite prejudice. As I will explain below, however, if the district court determines that there is a reasonable probability that it would have given Krecht a lower sentence at the offense level produced by application of the safety valve, then an evidentiary hearing is needed to determine whether Krecht would have been able to satisfy the safety valve's fifth element by providing the government with all truthful information and evidence concerning his offense. If, however, the district court determines that the sentence would not have been reduced even if the safety valve provision were applied, then I respectfully recommend that Krecht's § 2255 motion be **denied.**

## I. INTRODUCTION

Before his conviction in this case, Mahmoud Krecht had no criminal record. He lived with his wife and three children in suburban Palm Beach County. Krecht held a doctorate in pharmacy and for two years prior to his arrest was self-employed as a licensed pharmacist. But when the pharmacy's cash reserves ran low, Krecht began filling fake prescriptions for oxycodone and other controlled drugs and continued filling the prescriptions even though he knew that they were fakes. During the summer of 2007, when the fake prescription scheme was in full gear, Krecht's business checking account ballooned to more than $1 million.

But Krecht's new-found wealth was short-lived. On August 30, 2007, DEA agents arrested Vincent Anthony Montesano, who had been filling fake prescriptions with Krecht. Montesano agreed to cooperate with the DEA and participated in a sting operation that led to Krecht's arrest on September 4, 2007. A grand jury charged Krecht with one count of conspiracy to distribute a controlled substance (in violation of 18 U.S.C. § 846) and one count of possessing with intent to distribute a controlled substance outside the course of professional practice (in violation of 18 U.S.C. § 841). Krecht faced a maximum sentence of 20 years for each count.

On February 20, 2008, Krecht pled guilty pursuant to a written plea agreement with the government. Krecht agreed to plead guilty to the conspiracy

---

**1.** Krecht's newly obtained counsel first filed an amended § 2255 motion, but I struck that motion as an improper amendment under Federal Rule of Civil Procedure 15 (D.E. 20– 23). The next day, Krecht's counsel diligently filed a supplemental reply memorandum to the government's answer (D.E. 24).

count and in return the government agreed to withdraw the possession with intent to distribute count and agreed not to prosecute Krecht for money laundering (under 18 U.S.C. §§ 1956, 1957). Krecht also agreed to forfeit more than $1 million. The plea agreement stated that the United States Attorney's Office *may* file a motion to reduce Krecht's sentence under § 5K1.1 of the Federal Sentencing Guidelines or Federal Rule of Criminal Procedure 35, based on Krecht's providing substantial assistance to the government. The United States Attorney's Office never filed either motion, however. As is standard in written plea agreements in this district, Krecht acknowledged in the plea agreement that the decision to file or not to file a Rule 35 or § 5K1.1 motion was a decision committed to the sole discretion of the United States Attorney's Office and that the United States Attorney's Office's assessment of the nature of Krecht's cooperation would be binding and unreviewable.

In the plea agreement, Krecht agreed to recommend that the district court impose a sentence within the advisory guideline range and not to depart upward or downward from that range. Krecht also waived his right to appeal under 18 U.S.C. § 3742 any sentence within the guideline range. Krecht acknowledged the waiver of his appellate rights in open court, as required by *United States v. Bushert,* 997 F.2d 1343, 1351 (11th Cir.1993). However, the appeal waiver provision in the plea agreement did not waive Krecht's right to collaterally attack his sentence under 28 U.S.C. § 2255.

The PSI computed Krecht's total offense level to establish his guideline sentence as follows: First, Krecht was responsible for 30,000 kilograms of marijuana (arrived at using the guideline's drug equivalency tables for oxycodone), giving him a base offense level of 38. Next, Krecht received a two level increase because he used his special skills as a pharmacist in the commission of the offense. *See* U.S.S.G. § 3B1.3. Krecht then received a three level reduction for acceptance of responsibility, giving him a total offense level of 37, which, given his lack of criminal history, corresponded to 210–262 months. Because the maximum statutory penalty was 240 months, Krecht's guidelines range was 210–240 months.

Krecht's counsel filed objections to the PSI. At the sentencing hearing, however, his counsel explained to the court that he was not technically challenging the guidelines range, as doing so would violate the plea agreement, but was merely seeking a sentence in the low guidelines range. For the most part, the objections highlighted mitigating factors which the district court might consider in imposing a sentence. Both Krecht and his wife testified at the sentencing hearing. Krecht accepted responsibility but asked the district court for leniency.

Krecht's objections to the PSI also noted that he satisfied the criteria for a safety valve reduction, which would have reduced his total offense level by two points. But the PSI stated, in a wholly conclusory way, that Krecht was *ineligible* for the safety valve based on information furnished by the AUSA. As will be explained in greater depth in the body of this Report, the safety valve dispute called for the *district judge* to make factual findings to determine Krecht's eligibility for this relief. Nevertheless, it appears from the record that both defense counsel and the AUSA (and the probation officer who prepared the PSI) misunderstood or were unaware of how to properly apply the safety valve generally and the provision's relationship to the plea agreement specifically.

On July 18, 2008, the district court sentenced Krecht to 210 months imprisonment, the bottom of the guideline's range.

Krecht initially instructed his attorney to appeal, which he did, but after being informed that the United States Attorney's Office took the position that the appeal could affect whether a Rule 35 motion would be filed on Krecht's behalf, Krecht instructed his attorney to withdraw the appeal, which he also did.[2]

Krecht timely filed this § 2255 motion on July 14, 2009.[3]

## II. CLAIMS

Krecht raises the following claims:

1. His counsel was ineffective because he advised movant that he would receive a sentence in the high single digits or low double digits. However, the plea agreement did not contain this sentence and at sentencing counsel stipulated to a base offense level of 38, which resulted in a sentence in the high teens. Counsel did not consult movant about this decision, which movant at the time was not in agreement with.

2. His counsel was ineffective for failing to bring to the court's attention movant's eligibility for a "safety valve" or § 5K1.1 reduction of sentence.

3. His counsel was ineffective because he misadvised movant of the consequences of proceeding to trial and coerced movant to plea guilty through fear and intimidation.

4. His counsel was ineffective for failing to file an appeal and challenge the unreasonableness of the sentence imposed. Movant contends that counsel did not file an appeal

because it would have prejudiced movant's ability to obtain a Rule 35 motion from the government.

5. The government failed to file motions under U.S.S.G. § 5K1.1 or Rule 35 based on unconstitutional motives.

## III. STANDARD OF REVIEW

### A. SECTION 2255

■ A prisoner in federal custody may move the court which imposed sentence to vacate, set aside or correct the sentence if it was imposed in violation of federal constitutional or statutory law, was imposed without proper jurisdiction, is in excess of the maximum authorized by law, or is otherwise subject to collateral attack. 28 U.S.C. § 2255. If a court finds a claim under § 2255 to be valid, then the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." *Id.* To obtain this relief on collateral review, however, a petitioner must "clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady,* 456 U.S. 152, 166, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982) (rejecting the plain error standard as not sufficiently deferential to a final judgment).

■ Unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," the court shall "grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255. The

---

**2.** These facts are drawn from Krecht's testimony at sentencing, the guilty plea and factual proffer in support of the guilty plea, and the PSI. The sentencing transcript can be found at D.E. 10–2. The plea and factual proffer are available in Case. No. 07–80141–

CR at D.E. 70. The PSI is not publically available.

**3.** The Clerk initially referred this case to U.S. Magistrate Judge Patrick A. White, and Judge White reassigned it to me pursuant to Administrative Order 2010–79 (DE# 18).

Eleventh Circuit Court of Appeals has explained, "[a] habeas corpus petitioner is entitled to an evidentiary hearing on his claim 'if he alleges facts which, if proven, would entitle him to relief.'" *Smith v. Singletary,* 170 F.3d 1051, 1053 (11th Cir. 1999) (quoting *Futch v. Dugger,* 874 F.2d 1483, 1485 (11th Cir.1989)). However, "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Schriro v. Landrigan,* 550 U.S. 465, 474, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007).

 Additionally, when, as here, the defendant has pled guilty, he cannot raise any constitutional issues that predate his plea:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

*Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973).

### B. PROCEDURAL DEFAULT FOR FAILURE TO APPEAL

 A motion under § 2255 is not a substitute for direct appeal, and issues which could have been raised on direct appeal are generally not actionable in a § 2255 motion and will be considered procedurally barred. *Massaro v. United States,* 538 U.S. 500, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003). In particular, "the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review." *Bousley v. United States,* 523 U.S. 614, 621, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998); *see also United States v. Peter,* 310 F.3d 709, 712 (11th Cir.2002); *Tannen-*

*baum v. United States,* 148 F.3d 1262, 1263 (11th Cir.1998). When a defendant has procedurally defaulted on his claim, he is barred from collaterally attacking his conviction in federal court unless he can demonstrate either "cause" and actual "prejudice," or that he is "actually innocent." *Bousley,* 523 U.S. at 622, 118 S.Ct. 1604.

 Cause sufficient to excuse a procedural default "ordinarily requires a showing of some external impediment preventing counsel from constructing or raising the claim." *Murray v. Carrier,* 477 U.S. 478, 492, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). Mere inadvertence or neglect does not constitute good cause. *Cf. Prisco v. Frank,* 929 F.2d 603, 604 (11th Cir. 1991). To show actual prejudice, the movant must demonstrate not "merely that the errors [before the trial court] created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting [the entire trial court proceeding] with error of constitutional dimensions." *Frady,* 456 U.S. at 170, 102 S.Ct. 1584.

 In the context of overcoming a procedural default, "actual innocence" means factual innocence, and "[t]o establish actual innocence, the petitioner must demonstrate that, 'in light of all the evidence,' 'it is more likely than not that no reasonable juror [would have] convicted him.'" *Bousley,* 523 U.S. at 623, 118 S.Ct. 1604 (quoting *Schlup v. Delo,* 513 U.S. 298, 327–28, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995)).

### C. INEFFECTIVE ASSISTANCE OF COUNSEL

 In order to prevail on a claim of ineffective assistance of counsel, the movant must establish: (1) deficient performance—that his counsel's representation fell below an objective standard of reasonableness; **and** (2) prejudice—but for

the deficiency in representation, there is a reasonable probability that the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Chandler v. United States*, 218 F.3d 1305 (11th Cir.2000). The standard is the same for claims of ineffective assistance on appeal. *Matire v. Wainwright*, 811 F.2d 1430, 1435 (11th Cir.1987). The burden of proving ineffective assistance remains with the movant at all times. *Chandler*, 218 F.3d at 1315 n. 15. A court may decline to reach the performance prong of the standard if it is convinced that the prejudice prong cannot be satisfied. *Strickland*, 466 U.S. at 697, 104 S.Ct. 2052; *Waters v. Thomas*, 46 F.3d 1506, 1510 (11th Cir. 1995).

 Review of counsel's conduct is highly deferential. *Spaziano v. Singletary*, 36 F.3d 1028, 1039 (11th Cir.1994). Second-guessing an attorney's strategic defense is not permitted; rather, courts should presume effectiveness and avoid second-guessing with the benefit of hindsight. *White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir.1992). Because a wide range of performance is *constitutionally* acceptable, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir.1994). Courts "are not interested in grading lawyers' performances" but, "are interested in whether the adversarial process at trial ... worked adequately." *Id.* at 386. To be unreasonable, the performance must be such that **"no competent counsel would have taken the action that his counsel did take."** *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir.2001) (emphasis added). In other words, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer,

in the circumstances, would have done so." *Rogers*, 13 F.3d at 386.

 The claim of ineffective assistance of counsel may constitute cause for a procedural default. *See generally Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). However, an ineffective-assistance claim can serve as cause to excuse the procedural default of another habeas claim only if the habeas petitioner can satisfy the cause and prejudice standard with respect to the ineffective-assistance claim itself. *Edwards v. Carpenter*, 529 U.S. 446, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000). In addition, ineffective assistance claims are not subject to the "general rule that claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice." *Massaro v. United States*, 538 U.S. 500, 504, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003). Accordingly, the "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255." *Id.* at 509, 123 S.Ct. 1690; *see also Thomas v. United States*, 572 F.3d 1300, 1305 n. 5 (11th Cir.2009); *Lynn v. United States*, 365 F.3d 1225, 1234 n. 17 (11th Cir.2004).

 However, the Eleventh Circuit has held that "a valid sentence-appeal waiver, entered into voluntarily and knowingly, pursuant to a plea agreement, precludes the defendant from attempting to attack, in a collateral proceeding, the sentence through a claim of ineffective assistance of counsel during sentencing." *Williams v. United States*, 396 F.3d 1340, 1342 (11th Cir.2005). To hold otherwise, according to the *Williams* court, would permit the movant "to circumvent the terms of the sentence-appeal waiver simply by recasting a challenge to his sentence as a claim of ineffective assistance, thus rendering the waiver meaningless."

*Id.* "For a sentence-appeal waiver to bar claims raised in a § 2255 motion, '[a]t a minimum, the would-be petitioner must know at the time of the guilty plea that the right to federal habeas review exists, and he must realize he is giving up that right as part of his plea bargain.' " *Thompson v. United States,* 353 Fed.Appx. 234, 235 (11th Cir.2009) (quoting *Allen v. Thomas,* 161 F.3d 667, 670 (11th Cir.1998)). "When a valid sentence-appeal waiver containing express language waiving the right to attack a sentence collaterally is entered into knowingly and voluntarily, it will be enforceable and serve to prevent a movant from collaterally attacking a sentence on the basis of ineffective assistance of counsel." *Thompson,* 353 Fed.Appx. at 235 (citing *Williams,* 396 F.3d at 1342). In this case, Krecht's plea agreement waived only his right to a direct appeal; therefore, Krecht may still bring ineffective assistance claims under § 2255.

## IV. ANALYSIS

### A. Ineffective Assistance: Advice on Likely Sentence

Krecht's first claim is that counsel was ineffective for advising him that his sentence would likely be in the higher single digits or lower double digits. Krecht was ultimately sentenced to 210 months, or 17.5 years. Krecht asserts that he would not have pled guilty had his counsel not advised him that he would be sentenced to 8–12 years (D.E. 5, at 9).

During Krecht's plea colloquy, Krecht answered on the record that he was fully satisfied with his counsel's representation. The district court asked Krecht whether anyone had made any representations to him other than those contained in the plea agreement to induce him to plead guilty. Krecht said "no." The court also asked Krecht's counsel if he was aware of any representations or promises not contained in the plea agreement. Counsel said "No, Your Honor." The court then asked Krecht whether anyone in any way attempted to force him to plead guilty, to which Krecht answered no. The court asked Krecht whether he understood that the court could impose a statutory maximum term of imprisonment of up to 20 years. Krecht replied "Yes, Your Honor." The court also pointedly asked Krecht if he understood that he could not withdraw his plea if he received a longer sentence than he was then expecting. Krecht answered yes. The Court found that Krecht's plea of guilty was knowing and voluntary and adjudged him guilty of count one. (See 07–80141–CR, D.E. 168).

 Krecht's representations during the plea proceeding, as well as those of his lawyer and the findings by the Court when accepting the plea, "constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison,* 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977). Solemn declarations in open court carry a strong presumption of truthfulness, and a defendant bears a heavy burden to show that the plea was involuntary after testifying to its voluntariness in open court. *DeVille v. Whitley,* 21 F.3d 654, 659 (5th Cir.1994). "[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *United States v. Lemaster,* 403 F.3d 216, 221–22 (4th Cir.2005); *see also Thompson v. Wainwright,* 787 F.2d 1447, 1459–61 (11th Cir.1986) (holding that district court was not clearly erroneous in concluding that petitioner failed to meet his burden of presenting convincing evidence that his plea was coerced in the face of his earlier testimony that his plea was voluntary and not the product of coercion).

"A defendant who pleads guilty upon the advice of counsel may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the range of competence demanded of attorneys in criminal cases." *United States v. Signori*, 844 F.2d 635, 638 (9th Cir.1988). Generally, counsel's erroneous predictions or estimates do not rise to the level of deficient performance or render a plea involuntary. *Little v. Allsbrook*, 731 F.2d 238, 241–42 (4th Cir.1984); *Wellnitz v. Page*, 420 F.2d 935 (10th Cir.1970); *cf. United States v. Bradley*, 905 F.2d 359, 360 (11th Cir.1990) ("To the extent that [the defendant] claimed his guilty plea was based on his attorney's estimate of the sentence and offense level, the claim did not warrant withdrawal of the guilty plea where [the defendant] acknowledged to the court that he understood the possible maximum sentence for his crime to be greater than the sentence the court ultimately imposed.").

Framed by these rules, an attorney's bad guess as to sentencing will not invalidate a guilty plea; only *gross mischaracterizations* of the likely outcome are sufficient to satisfy this standard. *Iaea v. Sunn*, 800 F.2d 861, 865 (9th Cir.1986). For example, in *Mosher v. Lavallee*, 491 F.2d 1346, 1348 (2d Cir.1974), the Second Circuit found ineffective assistance when the defendant pled guilty after trial counsel told the him that the *trial judge had promised to impose the minimum sentence*.

Accordingly, the Court is entitled to rely on the sworn statements made by Krecht and his attorney in open court that no promises were made to Krecht other than what was contained in his plea agreement. Moreover, even taking Krecht's allegations at face value, his attorney appears to have only made a bad *prediction* regarding Krecht's ultimate sentence, but that prediction was not akin to a gross mischaracterization, as in *Mosher*. It should also be noted that Krecht quoted his attorney as saying: "You're facing high single digits to low double digits, between 8 and 12 years (D.E. 17, at 1)." This language (not to mention the plea colloquy) belies Krecht's after-the-fact characterization of his attorney's alleged prediction as a *promise*.

Additionally, courts have held that when a defendant pleads guilty and is informed by the court of the correct statutory sentencing range during the plea colloquy, no prejudice results from counsel's erroneous prediction. *See, e.g., Cruz v. United States*, 188 Fed.Appx. 908, 914 (11th Cir.2006); *Soto v. United States*, 37 F.3d 252, 254–55 (7th Cir.1994). Krecht confirmed on the record his understanding that he could be sentenced to 20 years in prison under the plea agreement. Therefore, Krecht's claim fails both *Strickland* prongs.

**B. Ineffective Assistance: Failure to Seek Lower Sentence**

Krecht's second claim is that his trial counsel was ineffective for failing to object to an offense level of 37 and for failing to object to the government's refusal to agree to certain departures. Krecht's co-defendants received 72 and 101 months imprisonment respectively because their guideline sentences were based on lesser amounts of drugs. Krecht argues that his counsel should have asked the district court to consider these disparities and also to consider Krecht for a safety value reduction under U.S.S.G. § 5C1.2.[4]

4. In his supplemental reply, Krecht claims that had he been informed of the import of paragraph 7 of his plea agreement, which prohibited him from seeking a *Booker* variance, he would not have pled guilty per the

### i. Failure to Object to Sentencing Guidelines

██ At sentencing, Krecht's counsel was careful to ensure that his objections were not construed as in any way challenging the guideline sentence (which would have violated the plea agreement) because at the time he thought that Krecht's best chance for a reduced sentence was a Rule 35 motion.

> **The Court:** And you filed some objections. Do you want to deal with those first?
>
> **Mr. Gersham [defense counsel]:** I'll deal with them the following way, **if it is ok with the government, Judge.** I want you to consider that which I set forth in these fifteen pages in light of the Plea Agreement, paragraph seven, which is a recommendation for the guidelines. So I don?t want to invalidate the Plea Agreement. I would, if I technically necessarily have to withdraw them as objections, ask the Court to consider them for purposes of a lower guidelines sentence, **if that's ok with the government Judge.**
>
> **The Court:** All right.
>
> **Ms. Vorpe Quinlan [AUSA]:** It is in the Plea Agreement that we would agree to a recommendation of a guideline sentence in this case. Both sides would.
>
> **The Court:** All right. (D.E. 10–2, at 13) (emphasis added).

When negotiating the plea and later at sentencing, Krecht's counsel made a **strategic decision** to pursue a Rule 35 motion as Krecht's primary avenue for a reduced sentence. Krecht had already admitted to the drug quantity in the government's fac-tual proffer. Therefore, the district judge would not have entertained an argument at sentencing challenging the amount. The government also notes that, with exception of the drugs found on the day of the sting operation, Krecht was only charged for the oxycodone, but not other illegal substances, such as hydrocodone and Xanax. Had Krecht challenged the drug amount in the PSI and put the government to its proof, the government may well have demonstrated to the district court that Krecht was responsible for even *more* drugs than discussed in the PSI. This, in turn, might have raised Krecht's offense level even higher. The government also notes that denying the drug quantity may have endangered Krecht's eligibility to receive his 3 level reduction for acceptance of responsibility.

██ Krecht's counsel also did not pursue a *Booker* variance. The reason for this was obvious. Krecht's counsel did not want to invalidate the plea agreement, which would have exposed Krecht to *further* charges and a potential sentence in excess of 20 years. Given the clear proof on the drug quantity issue, Krecht's counsel reasonably decided to pursue a lower sentence through other means, such as a Rule 35 motion. This was a permissible strategic decision. Only after Krecht received a sentence in excess of his co-defendants did he write to his attorney and explain that he was not happy with the *result* of the proceedings. But Krecht's trial counsel's decision not to object to the guidelines sentence in the PSI in a way that would breach the plea agreement was strategically reasonable and did not constitute deficient performance under *Strick-*

---

agreement. Krecht argues that the plea colloquy did not directly address the import of paragraph 7. Because Krecht's original claim only challenged counsel's performance at sentencing, this additional argument, raised for the first time in the reply brief, constitutes an additional claim that was not timely filed under 28 U.S.C. § 2255(f). It should be noted, however, that neither Rule 11 nor the cases cited by Krecht require a defendant to be appraised of this type of clause on the record during the plea colloquy.

*land.* Additionally, Krecht cannot establish prejudice on this claim because he cannot show that he would have received a lower sentence.

### ii. Safety Valve Request

Krecht also argues that his counsel was ineffective for failing to pursue a safety valve reduction under U.S.S.G. § 5C1.2 at part of his guidelines computation. This claim merits discussion.

■■■ The safety valve provision relaxes the sentencing guidelines for first-time, nonviolent offenders who meet the following criteria:

(1) the defendant does not have more than one criminal history point; (2) the defendant did not use violence or a credible threat thereof or possess a dangerous weapon in the commission of the crime; (3) the offense did not result in anyone's death or serious injury; (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense; and (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the government all information and evidence the defendant has concerning the offense.

*Deltoro–Aguilera v. United States,* 625 F.3d 434, 437 (8th Cir.2010) (citing U.S.S.G. § 5C1.2)

■■■ Generally, when a defendant satisfies the elements of the safety valve provision, the district court is to sentence him without regard for any mandatory minimum sentence. In the case of narcotics crimes, however, U.S.S.G. § 2D1.1(b)(11) provides that a defendant who meets the criteria set forth in § 5C1.2(a)(1)-(5) receives a two level reduction in his guideline offense level. *See generally United States v. Mertilus,* 111 F.3d 870, 874 (11th Cir. 1997).

■■■ The application of the safety value is mandatory. If the defendant proves that he has met the five elements enumerated in § 5C1.2(a)(1)-(5), then the district court *must* grant him safety valve relief. *United States v. Quirante,* 486 F.3d 1273 (11th Cir.2007). The safety valve's mandatory nature includes the defendant's entitlement to a two level reduction under § 2D1.1(b)(11). *United States v. Perez–Cordova,* 260 Fed.Appx. 158, 159 (11th Cir.2007).

■■■ Significantly, the question of whether the defendant provided a truthful statement to the government for purposes of obtaining the mandatory safety valve relief is a **factual issue for the district court.** *United States v. Brownlee,* 204 F.3d 1302, 1305 (11th Cir.2000). The defendant bears the burden of establishing his entitlement to safety valve relief. *United States v. Cruz,* 106 F.3d 1553, 1557 (11th Cir.1997).

### 1. Deficient Performance

■■■ As an initial matter, it should be noted that counsel would not have invalidated Krecht's plea agreement had he pursued the safety valve argument because the safety valve is an offense characteristic and **not a downward departure.** Although the government characterizes the safety valve as a downward departure, and courts sometimes refer to it as such, it is "technically not a departure" at all but "a separate specific offense characteristic" that reduces the offense level by two levels. 1 PRACTICE UNDER THE FEDERAL SENTENCING GUIDELINES §§ 2.05[D][2], 6.03[G] (David Debold ed., 5th ed.2010). Consistent with this view, the Eleventh Circuit has explained that the "[a]pplication of § 5C1.2 does **not** ... result in a departure from the guidelines range." *United States v. Cruz,* 106 F.3d 1553, 1556 (11th Cir. 1997) (emphasis added); *see also United States v. Freeman,* 139 F.Supp.2d 1364, 1372 (S.D.Fla.2001).

 Krecht argues that his counsel was ineffective for failing to place the safety valve issue squarely before the district court. Although counsel initially filed objections to the PSI which stated that Krecht qualified for a safety valve reduction, Krecht argues that counsel should have affirmatively and directly brought the issue to the court's attention *at sentencing* so that the district court could resolve the factual issues.[5] Instead, counsel effectively withdrew his safety valve argument by stating that he would withdraw the objections and seek a lower guidelines sentence. Consequently, the district court never ruled on the objections or made factual findings regarding Krecht's eligibility for safety valve relief. Instead, the district court adopted the PSI—which itself found that that Krecht was ineligible for a safety valve reduction based solely on the AUSA's unspecific assertion that Krecht did not provide a complete statement to the government.[6]

The case law supports Krecht's argument. In *United States v. Espinosa*, 172 F.3d 795 (11th Cir.1999), the Eleventh Circuit vacated the defendant's sentence after finding that the district court erred in deferring to the government on the issue of whether the defendant qualified for the safety value. *Espinosa* emphasized that the sentencing court had responsibility for determining the truthfulness of the information the defendant provided. *Id.* at 797; *see also United States v. Villegas–Ortiz*, 300 Fed.Appx. 718, 720 (11th Cir.2008) ("the district court must independently assess the facts and may not rely on the government's assertion of dishonesty" in determining safety valve eligibility); *cf. Freeman*, 139 F.Supp.2d at 1370 (safety

valve provision assigns "to the **judge** the role of fact-finder with respect to the truthfulness and completeness of the defendant's safety valve statement") (emphasis added).

Krecht's counsel does not appear to have appreciated this distinction; otherwise, he would not have offered to withdraw his objections on the safety valve issue. Initially, Krecht's counsel stated in his objections to the PSI that Krecht qualified for a reduced sentenced under the safety valve. But counsel did not pursue this argument at sentencing, and in fact *conceded* the point by indicating that he would withdraw his objections and merely ask for a sentence at the bottom of the guidelines. In discussing his objection, counsel twice qualified his position by saying *if it's ok with the government*, which indicated that he was unaware that under *Espinosa* the government's position on the safety valve was not entitled to deference and that under *Cruz* the safety valve was not considered a departure. Thus, the record shows that Krecht's counsel was unaware or misunderstood controlling law governing the application of the safety valve.

 Of course, counsel is never deficient for failing to raise a meritless claim. *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir.2000). The facts presented here, however, indicate that Krecht's claim for a safety valve reduction may well have been meritorious.

It is undisputed that Krecht meets the first four requirements for the safety valve. According to the PSI, Krecht had no criminal history points. The conduct described gives no indication whatsoever that Krecht ever used or threatened vio-

---

5. Krecht's objections to the PSI succinctly stated "Defendant qualified for a reduction under the safety valve provision." (07–80141–CR, D.E. 115, ¶ 9).

6. "According to the [AUSA] the defendant does not qualify for a reduction under the safety valve provision, pursuant to § 5C1.2, as he has not provided a complete statement to the government." (PSI, ¶ 62).

lence, that his conduct resulted in serious bodily injury or death, or that he managed or supervised others in the commission of the offense.

The government also does not contest that Krecht provided *some* truthful information on the course of conduct constituting the offense for which Krecht was convicted. Instead, the government argues that Krecht would not have been eligible for a safety valve because he gave incomplete and misleading statements *following his arrest* and because he did not disclose that his wife had contracted to sell the pharmacy to a third party. Neither of these arguments is persuasive.

■ First, the safety valve requires that all truthful information be provided "not later than the time of sentencing." U.S.S.G. § 5C1.2(a)(5). As such, "the safety valve is available so long as the government receives the information no later than the time of the sentencing hearing, *even if a defendant's last-minute move to cooperate is a complete about-face." Deltoro–Aguilera v. United States*, 625 F.3d 434, 437 (8th Cir.2010) (emphasis added). In this case, Krecht pled guilty and received a three level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1. Nevertheless, the PSI states that, *according to the AUSA*, Krecht did not qualify for a safety valve adjustment because he had not provided the government with a complete statement (PSI, ¶ 62). The PSI does not state what information Krecht failed to provide regarding his offense, and this statement is somewhat inconsistent with the three-level reduction for acceptance of responsibility, which generally requires the defendant to truthfully admit information regarding his *offense*. Note 1(A), U.S.S.G. § 3E1.1.

Second, under § 5C1.2(a)(5), the defendant must provide all truthful information to the government regarding "the *offense or offenses* that were part of the same course of conduct or of a common scheme or plan" (emphasis added). Krecht argues that the sale of the pharmacy was, in effect, a collateral matter, not part of the course of conduct or scheme comprising the offense. Krecht's point is consistent with the language of § 5C1.2 and is well-taken. The plain language of the § 5C1.2 would seem to exempt post-indictment activity from disclosure because such activity is not part of the conduct for which the defendant is charged.

The government also argues that the sale of the pharmacy *may* have violated Krecht's plea agreement, wherein he promised to assist the government in the forfeiture of his assets. Again, the failure to disclose information regarding forfeited assets seems not to directly implicate the *offense* that Krecht pled guilty to pursuant to his plea agreement.

Cases interpreting § 5C1.2(a)(5) do not support the government's position concerning the consequences flowing from Krecht's failure to disclose his wife's sale of the pharmacy. In order to qualify for a safety valve reduction, Krecht had to "truthfully provide all the information he possesse[d] *concerning the crime." United States v. Richardson*, 225 F.3d 46, 53 (1st Cir.2000) (emphasis added). The "plain language" of subsection five "requires a defendant to both truthfully and fully disclose information within her knowledge *relating to the crime for which she is being sentenced." United States v. Figueroa*, 199 F.3d 1281, 1283 (11th Cir. 2000) (emphasis added). There is no indication in the record that *at the time of sentencing* Krecht was less than completely forthcoming in providing the government with all information that he possessed relating to *the crime for which he was sentenced*. The after-the-fact sale of the pharmacy seems to have little, if any, bearing on this question. *See also Ville-*

*gas–Ortiz,* 300 Fed.Appx. at 719–20 ("Lies and omissions do not necessarily disqualify a defendant from safety-valve relief as long as the defendant 'makes a complete and truthful proffer not later than the commencement of the sentencing hearing.' ") (quoting *United States v. Brownlee,* 204 F.3d 1302, 1305 (11th Cir.2000)).

 It is also important to note that the safety valve provision does not mandate a specific form or manner of disclosure. *United States v. De La Torre,* 599 F.3d 1198, 1206–07 (10th Cir.2010) (explaining that the safety value does not "delineate[ ] the suitable methods of providing the information to the Government" but "only requires the defendant provide, and the Government receive, the information 'not later than the time of the sentencing hearing.' "). Additionally, section (5) specifically states that "the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement." U.S.S.G. § 5C1.2(a)(5).[7]

Krecht has therefore demonstrated on the present record that his counsel's argument for a safety valve reduction would not have been meritless. However, because Krecht bears the burden of proof, he must show that the record does not support *any* strategic rationale for counsel's decision to effectively abandon the safety valve argument at the sentencing hearing.

By failing to press the safety valve issue at sentencing, Krecht's counsel permitted the AUSA's judgment in the PSI to go unchallenged. Instead, counsel should have presented specific factual arguments showing how Krecht had met the elements of the safety valve **and should have asked the district court for a specific factual finding on this matter.** Counsel's one-sentence statement, buried in his objection to the PSI (and then effectively abandoned at the sentencing hearing), that Krecht met the elements of the safety valve, was woefully inadequate to inform the district court of its role as the ultimate fact-finder concerning whether Krecht had provided the government with all the truthful information he had regarding his offense before sentencing.[8]

Furthermore, defense counsel's statement that he was prepared to withdraw the objections and ask the court to consider them as part of a lower guidelines sentence essentially conceded the safety valve issue. Counsel's explanation to the district court regarding his objections demonstrates that he was unaware of the controlling Eleventh Circuit precedents in *Cruz* and *Espinosa* that (1) the safety valve is not a downward departure, (2) the sentencing judge, not the government, must make a factual determination regarding the defendant's eligibility for the safety valve, and (3) that no deference was due to the government's position on the safety valve.

Had counsel properly understood the controlling case law regarding the safety

---

7. In addition, the safety valve provision requiring the defendant to provide truthful information about the offense need not rise to the level of substantial assistance necessary to support a § 5K1.1 motion. *United States v. Montanez,* 82 F.3d 520, 522 (1st Cir.Mass. 1996); 1 Practice Under the Federal Sentencing Guidelines § 2.05[D][2] (citing cases).

8. The government improperly conflates the issue of the safety valve with a downward

departure and argues, in apparent ignorance of *Cruz,* that both arguments would have violated the plea agreement (D.E. 10, at 15–16). U.S. Probation and Pretrial Services, meanwhile, appears to have erroneously concluded that the government's position on the safety value was *dispositive* because the PSI states that Krecht was not eligible for a safety valve reduction based only on the AUSA's position (see note 6, *supra* ).

valve, he would have realized that (1) there was no need to withdraw the objections as such because he was not seeking a downward departure, and (2) he did not need the government's assent because the application of the safety valve would not have violated the plea agreement. Counsel's statement to the court clearly indicates that he did not appreciate the difference between seeking a downward departure or *Booker* variance, both of which would have violated the plea agreement, and seeking a safety valve reduction, which was not inconsistent with the plea agreement. In particular, counsel's statement that the objections should be considered for the purposes of imposing a lower guidelines sentencing is logically inconsistent with the application of the safety valve, which alters the guidelines range itself.

Accordingly, it cannot be said that Krecht's counsel was guided by strategic considerations in failing to press for a safety valve reduction because there was nothing in the plea agreement that would have prevented him from raising this claim. Instead, counsel appears to have been guided by a misunderstanding or ignorance of controlling Eleventh Circuit case law interpreting a key provision of the sentencing guidelines aimed a first-time, nonviolent offender such as a Krecht (and by a similar misunderstanding by the prosecutor and Probation Department officer who prepared the PSI).

■ The Court therefore finds that the decision not to seek a safety valve reduction cannot be attributed to a strategic play to win a Rule 35 motion because the government agreed in the plea agreement to a guidelines sentence—and the application of the safety valve would merely have altered the guidelines range. Because the safety value (1) is not a downward departure, (2) is not committed to the discretion of the government, and (3) does not require that a defendant volunteer informa-

tion on matters collateral to the offense, the record fails to evince *any* strategic rationale for Krecht's counsel's failure to raise this claim. Instead, the record strongly supports the conclusion that counsel's failure to properly pursue this argument was based on his ignorance or gross misunderstanding of the Eleventh Circuit's cases interpreting the safety valve provision.

Krecht, on the other hand, has amply demonstrated that his safety valve argument might have had merit and that under controlling Eleventh Circuit case-law the district court, not the government, should have made a factual finding as to Krecht's eligibility. Counsel's apparent deference to the government on this issue during Krecht's sentencing hearing effectively permitted the *prosecutor* to determine Krecht's eligibility for the safety valve, in contravention of clear, binding case law in *Espinosa*.

■ Nevertheless, Krecht must establish not merely that his counsel was unaware of or misinterpreted the law and therefore made poor decisions, but that his counsel's performance was so deficient that no reasonable attorney would have taken the actions that he did. *Rogers,* 13 F.3d at 386. While it was clearly permissible to focus on winning a § 5K1.1 or Rule 35 motion from the government, there was no reasonable explanation for counsel to abandon the safety valve argument as well (other than his misunderstanding or ignorance of the law).

■ While counsel's failure to research or cite cases does not generally rise to the level of deficiency required under *Strickland,* counsel's apparent ignorance of controlling legal authority that results in a fundamentally flawed strategy may constitute deficient performance. For example, in *Dixon v. Snyder,* 266 F.3d 693 (7th Cir.2001), the Seventh Circuit affirmed the

district court's issuance of a writ of habeas corpus where the district court had concluded that defense counsel was unaware of a key statute governing the admissibility of prior inconsistent statements, where such statements were critical in proving the defendant's guilt. It is clear that Krecht's counsel was unaware of (or incompetently misinterpreted) the Eleventh Circuit's opinions in *Espinosa* and *Cruz*— and thus unaware that (1) the final say over the safety valve provision rested with the *judge* and (2) the application of the safety valve would not result in a downward *departure*.[9]

 Where counsel's strategy is the result of ignorance of the law, his actions may nonetheless fail to amount to deficient performance under *Strickland* if a hypothetical reasonable counsel in his position may *still* have made the same decision. *Harich v. Dugger*, 844 F.2d 1464, 1470 (11th Cir.1988) ("It is not enough for petitioner to claim that his lawyer was ignorant of the Florida law. Petitioner must prove that the approach taken by defense counsel would not have been used by professionally competent counsel.").

Counsel's decision not to seek a factual determination by the district court on Krecht's eligibility for the safety valve provision was based on at least two and perhaps three misunderstandings of the law. First, counsel was unaware that the safety valve is not a downward departure. Second, counsel was unaware that the sentencing judge, not the government, was required to make factual findings regarding the safety valve. Third, counsel may also have been unaware that Krecht's failure to disclose the sale of the pharmacy was not dispositive of Krecht's eligibility for a safety value reduction, because the

sale of the pharmacy was not part of the course of conduct constituting the offense.

The safety valve could have reduced Krecht's sentence by more than three years and Krecht would have suffered no penalty for raising this claim because it was not a downward departure in violation of his plea agreement. Therefore, a professionally competent counsel, aware of the correct legal standard governing the safety valve, would not have paid such short shrift to this issue.

The PSI's conclusory statement asserting Krecht' ineligibility for the safety valve did not articulate a single fact regarding the course of conduct that was part of Krecht's offense (i.e., conspiracy to distribute a controlled substance) which Krecht did not fully provide to the government. The government's response to Krecht's § 2255 motion also fails to articulate a single undisclosed fact. Krecht's account of his providing the *relevant* information required by section (5) of the safety valve, then, is essentially unchallenged:

> Counsel was urged and directed to expound upon the fact that the Movants cooperation and statements were complete and truthful. The Movant even provided the Government with self-incriminating material, namely copies of prescriptions which were provided to him from codefendant Vincent Montesano, to be filled at a future time, which wasn't known to the Government or the Agents. The Movant's wife, under instructions from the Movant, gave this evidence to the defense counsel, which is turn was given to the Government.

> \* \* \*

> The defense counsel refused to make this fact known to the Court, and state

---

**9.** It is clear from the government's response in this proceeding that it, too, is either unfamiliar with or misunderstands the Eleventh Circuit cases explaining how the safety valve operates.

to Movant, "I've already filed my objections, the judge has them." (D.E. 2, at 11).

As the Eleventh Circuit has explained, courts "are not interested in grading lawyers' performances" but, "are interested in whether the adversarial process at trial ... worked adequately." *Rogers,* 13 F.3d at 386; *see also Strickland,* 466 U.S. at 686, 104 S.Ct. 2052. Where defense counsel's actions directly resulted in the wrong person making key factual determinations that affected the defendant's sentence (i n this case, the AUSA instead of the district judge), it cannot be said that the adversarial process worked adequately. No reasonable attorney after asserting a good-faith safety valve objection would have permitted the prosecutor (or the Probation Department officer) to make the ultimate factual findings on the defendant's eligibility, instead of the presiding district judge.

According to the statement of reasons, the district court adopted the PSI without change, but there is no evidence that the district court ever *ruled* on Krecht's objection to the PSI's conclusion that the safety valve was unavailable or made any factual findings regarding the safety valve. Perhaps because of counsel's statement that he would withdraw his objections as objections *per se,* the district court stated that it "considered the statements of the parties, the [PSI], which contains the advisory guidelines and the statutory factors" but not Krecht's objections. Thus, Krecht's counsel was deficient for failing to advise the district court of its role as the ultimate arbiter of Krecht's eligibility for a safety value reduction and for withdrawing the objections in the first place. Accordingly, Krecht has satisfied *Strickland*'s deficiency prong on his ineffective assistance claim for failing to advocate for a safety valve reduction during the sentencing hearing.

### 2. Actual Prejudice

To obtain relief on this claim, Krecht must also show that he suffered prejudice as a result of his counsel's deficient performance.

Krecht has not done so for two reasons.

First, the mere fact that the government incorrectly concluded that Krecht was ineligible for safety valve relief because he initially lied to investigators and failed to disclose the sale of the pharmacy does not necessarily mean that the district court would have concluded that Krecht was, in fact, eligible.

Because Krecht had the burden of proving his eligibility for safety-valve relief, he had to convince the district court to make a finding that he truthfully provided to the government **all** information and evidence he had concerning the offense. *See United States v. Milkintas,* 470 F.3d 1339 (11th Cir.2006). While the record establishes that Krecht did provide *some* information, Krecht has not yet sufficiently established that he provided *all* the information he had about the offense before sentencing.

Ordinarily, the Court would hold an evidentiary hearing on this issue because it cannot "be conclusively determined from the record that the petitioner was not denied effective assistance of counsel." *Smith,* 170 F.3d at 1054. An evidentiary hearing is not necessary at the present time, however, because Krecht also cannot establish that his sentence would have been different had his total offense level been reduced as a result of the safety valve.

An analysis of the sentencing guidelines demonstrates Krecht's failure on this critical point:

Krecht's guideline range (at a total offense level of 37) was 210–240 months, and Krecht was sentenced to 210 months. Had Krecht received the benefit of the

safety valve reduction, his total offense level would have been reduced to 35 and his sentencing range would have been 168–210 months. Krecht bears the burden of showing that at a total offense level of 35, the district court would have imposed a lower sentence. *Chandler*, 218 F.3d at 1315 n. 15.

■ This showing is extremely difficult to make. The severity of a sentence imposed **within the statutory penalty range** is generally not subject to review under § 2255 because it does not raise a statutory or constitutional question. *Kett v. United States*, 722 F.2d 687, 690 (11th Cir.1984); *Nelson v. United States*, 709 F.2d 39, 40 (11th Cir.1983).

■ However, in *Glover v. United States*, 531 U.S. 198, 121 S.Ct. 696, 148 L.Ed.2d 604 (2001), the Supreme Court held that a defendant could establish prejudice if the application of the correct guideline range would have resulted in less jail time. In *Glover*, the defendant was sentenced to 84 months when the guidelines called for 78 to 97 months. Had counsel not performed deficiently, the correct guidelines range would have been 63 to 78 months. The Supreme Court noted that at the very least Glover was sentenced to 6 excessive months and held that any amount of increased jail time has Sixth Amendment significance in assessing ineffective assistance claims.

To satisfy *Strickland*'s prejudice prong on a *Glover* claim, Krecht must show a reasonable probability that "but for" his counsel's deficient performance, he would have received a lesser sentence. *See, e.g., United States v. Marsh*, 548 F.Supp.2d 1295, 1302 (N.D.Fla.2008); *see also Stano v. Dugger*, 883 F.2d 900, 911 (11th Cir. 1989) (petitioner must show that "a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different").

Krecht cannot make this showing.

Unlike the scenario in *Glover*, the guideline reduction sought here would not have foreclosed the identical sentence and prejudice cannot be assumed because a 210 month sentence would have been within the guidelines range in *either* scenario. During the sentencing hearing, the district court stated that it considered the advisory guidelines and statutory factors and proceeded to sentence Krecht to 210 months without further comment or explanation. And in the statement of reasons filed with U.S. Probation and Pretrial Services, the district court noted that the "low end of guidelines range provides just and reasonable pun[ishment]." Because the district court found that 210 months provided for a just and reasonable punishment, Krecht cannot demonstrate a reasonable likelihood of a different sentence merely because the district court sentenced him to the low end of the guidelines. As noted above, the district court could have still sentenced him to 210 months **even if the safety valve provision had been applied,** and Krecht has made no showing that it wouldn't have.

■ If, however, upon reviewing this Report, the district court finds that there is a *reasonable probability* that it would not have imposed a 210–month sentence at a total offense level of 35 but would instead have sentenced Krecht to a term of less than 210 months, then Krecht *may* have been prejudiced by his counsel's deficient representation on the safety valve issue. In that case, the district court should hold an evidentiary hearing to determine whether Krecht can also show a reasonable probability that he would have been able to establish the fifth element of the safety value at his sentencing hearing. If Krecht can make this showing as well, then he has established actual prejudice and the district court should grant his § 2255 motion on the issue of ineffective

assistance of counsel and resentence Krecht at a total offense level of 35.

## C. Ineffective Assistance: Coercion to Enter Plea Guilty

Krecht's third claim is that his counsel misadvised him of the consequences of proceeding to trial and coerced a plea of guilty through fear and intimidation. In legal terms, this claim is essentially the same as Krecht's first claim—i.e., that ineffective assistance rendered his plea involuntary—and it is similarly belied by the transcript of the plea colloquy.

Krecht claims that his trial counsel coerced his guilty plea by telling him that if he did not plead guilty he would be charged with money laundering and would have to serve two consecutive 20–year sentences. According to Krecht, his counsel also stated that if he did not plead guilty, "your wife could get into trouble" and that Krecht would not receive a fair trial in any event because of his nationality (D.E. 5, at 14).[10]

 The Court will not credit these bald allegations as they are flatly contradicted by Krecht's statements at both the plea and sentencing hearings. As the government points out, both Krecht and his wife spoke extensively on the record during the sentencing hearing and neither so much as alluded to any coercion or intimidation. Unlike Krecht's incredible allegations about coercion in his § 2255 motion, his declarations in open court carry a strong presumption of verity. *Blackledge,*

431 U.S. at 74, 97 S.Ct. 1621. On the other hand, Krecht's coercion allegations in this § 2255 action are "palpably incredible," and the Court is not required to hold an evidentiary hearing based on bald assertions which contradict the movant's former under-oath statements. *Shah v. United States,* 878 F.2d 1156, 1158 (9th Cir.1989). Rather, Krecht's conclusory allegations are subject to the general rule "that in collaterally attacking a plea of guilty a prisoner 'may not ordinarily repudiate' statements made to the sentencing judge when the plea was entered." *Blackledge,* 431 U.S. at 73, 97 S.Ct. 1621. "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that, in the face of the record, are wholly incredible." *Id.* at 74, 97 S.Ct. 1621.

## D. Ineffective Assistance: Failure to Appeal

Krecht's fourth claim is that his counsel was ineffective for failing to appeal.[11] Per Krecht's instructions, his counsel initially filed a notice of appeal. Thereafter, Krecht's counsel contacted the Untied States Attorney's Office, which informed him that the Office's Appellate Division "has taken the position that the filing of an appeal *does* affect whether [the] office offers the defendants a Rule 35." After Krecht's attorney related this information to him, Krecht instructed his attorney in writing to withdraw the appeal.[12]

---

**10.** Krecht's new counsel submitted a reply brief but did not pursue *any* of these allegations. *Cf. Ledford v. Peeples,* 568 F.3d 1258, 1285 (11th Cir.2009) (treating as abandoned claims not argued in a party's brief).

**11.** Krecht's stated reason for appeal was for the Eleventh Circuit to consider whether the district court abused its sentencing discretion by sentencing Krecht to a longer term than his co-felons. The Eleventh Circuit has previ-

ously described this claim as "frivolous." *United States v. Hendrieth,* 922 F.2d 748, 752 (11th Cir.1991); *United States v. Allen,* 724 F.2d 1556, 1558 (11th Cir.1984).

**12.** Correspondence between Krecht and his attorney was filed under seal. The Court has reviewed the correspondence and it confirms that Krecht provided specific written instructions to withdraw the appeal.

When a lawyer disregards specific instructions from the defendant to file a notice of appeal, such action is professionally unreasonable *per se*. *Roe v. Flores–Ortega*, 528 U.S. 470, 477, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000). However, "a defendant who explicitly tells his attorney not to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently." *Id.* The undisputed record shows that Krecht's attorney followed Krecht's instructions initially to file the appeal and later to withdraw it. Krecht's attorney's performance was professionally reasonable and therefore not ineffective.

### E. Government's Unconstitutional Motive

Finally, Krecht argues that the government refused to file a Rule 35 motion on his behalf based on an unconstitutional motive of preventing Krecht from prosecuting his appeal.

As a general matter, and as Krecht acknowledged in his plea agreement, Rule 35 provides the government with "a power, not a duty, to file a motion when a defendant has substantially assisted." *Wade v. United States*, 504 U.S. 181, 185, 112 S.Ct. 1840, 118 L.Ed.2d 524 (1992). As such, "federal district courts may review the government's refusal to file a substantial-assistance motion only if the defendant first makes a 'substantial threshold showing' that the refusal was based upon an unconstitutional motive, such as the defendant's race or religion." *United States v. McNeese*, 547 F.3d 1307, 1308 (11th Cir.2008).

In *United States v. Dorsey*, 512 F.3d 1321 (11th Cir.2008), *vacated*, 554 F.3d 958 (11th Cir.2009), the Eleventh Circuit joined the Third and Ninth Circuits in holding that the government's refusal to file a § 5K1.1 motion to punish the defendant for exercising his right to a jury trial is an unconstitutional motive. *See also Bordenkircher v. Hayes*, 434 U.S. 357, 363, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978) (punishing "a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort"). Subsequently, the Eleventh Circuit vacated its opinion in *Dorsey* and decided that, since the movant had failed to make a substantial showing that the government was motivated by a desire to prevent him from exercising his right to trial, it needn't reach the question of whether it was constitutionally impermissible to refuse to file a § 5K1.1 motion because of a defendant's exercise of trial rights.

The Eleventh Circuit has explained that "U.S.S.G. § 5K1.1 and Rule 35(b) work in tandem to give the Government two opportunities to reward a defendant's substantial assistance in the investigation or prosecution of others. Section 5K1.1 addresses cooperation before sentencing while Rule 35(b) addresses cooperation after sentencing." *United States v. Alvarez*, 115 F.3d 839, 842 (11th Cir.1997). The Court recognizes that *Dorsey* addressed a § 5K1.1 motion, not a Rule 35 motion, and dealt with the government's denial of a constitutional right to trial by jury, not a statutory right to appeal. Nevertheless, even assuming that in an appropriate case the Eleventh Circuit would hold that the government's refusal to file a Rule 35 motion because of a defendant's appeal to be an unconstitutional motive, Krecht's claim would *still* fail on the facts of this case.

In finding that the defendant failed to make a sufficient showing of the government's improper motive, *Dorsey* considered it significant that the government made its § 5K1.1 offer in the context of plea bargain. 554 F.3d at 961. In his plea agreement with the government, Krecht also waived his right to a direct appeal of a

guideline sentence. In return, the government agreed to dismiss the possession with intent to distribute count and not to indict on money laundering. Were Krecht to then appeal, he would have become the government's adversary and forced the government to do work unnecessary work in moving to dismiss the appeal. *Prempeh v. United States*, No. 10–23636 (S.D.Fla. Apr. 4, 2011) (Report of Magistrate Judge), at 14. The government would then have been entitled to consider Krecht's appeal a breach of the plea agreement, which would be a constitutionally permissible reason for refusing to file a Rule 35 motion.

■ As such, Krecht fails to make a sufficient showing that the government did not file a Rule 35 motion solely to prevent him from appealing his sentence. To succeed on his claim, Krecht would have to show that the government acted out of "vindictiveness," defined as "the desire to punish a person for exercising his rights." *United States v. Barner*, 441 F.3d 1310, 1315 (11th Cir.2006). A defendant may prove vindictiveness either by producing "evidence of a prosecutor's retaliatory motive" or by showing "facts sufficient to give rise to a presumption of vindictiveness." *United States v. Paramo*, 998 F.2d 1212, 1220 (3d Cir.1993).

The facts of this case do not support a presumption of vindictiveness. Rather, the government has explained that it refused to file a Rule 35 motion because Krecht was not completely truthful and did not reveal the sale of his pharmacy. The PSI supports these contentions. And the government already voiced its dissatisfaction with Krecht's information before the issue of an appeal ever arose.

■ Because the government has come forward with legitimate reasons explaining its failure to file a § 5K1.1 or Rule 35 motion, no presumption of vindictiveness applies. *Id.* at 1221. "Because [Krecht] cannot rely on a presumption of vindictiveness, he must prove actual vindictiveness in order to prevail." *Id.* "This showing is, of course, exceedingly difficult to make." *United States v. Meyer*, 810 F.2d 1242, 1245 (D.C.Cir.1987). "To prove actual vindictiveness, [Krecht] must present objective evidence that the government acted *solely* to punish him for exercising his legal rights, and that the reasons proffered by the government are pretextual." *Dorsey*, 512 F.3d at 1325–26 (citing *Paramo* and *Meyer*) (emphasis added).

Krecht cannot make this showing. Again, though the government's stated position is that that the filing of an appeal *does* affect whether a Rule 35 is offered, Krecht had already bargained away his right to appeal, so the government would have been entitled to act to preserve the benefit of the bargain it struck in the plea agreement. In other words, the government would have had a legitimate motive to preserve its bargain and prevent Krecht from breaching the plea agreement.[13]

Moreover, the record shows that the government had *other*, permissible motives not to file a Rule 35 motion. The government was already unhappy with Krecht's information because it had grave doubts about his credibility. For example, the government explains that in his first debriefing, Krecht falsely claimed that the co-defendant Montesano held a gun to his head and forced him to fill the prescriptions. After the evidence demonstrated

**13.** Although Krecht's attorney focused on the *Dorsey* argument that the government's motives were unconstitutionally designed to prevent Krecht from appealing, initially Krecht also alleged that the government refused to file a motion on his behalf because he is not Caucasian and is a member of the Islamic faith. The record contains absolutely no evidence substantiating either of these allegations.

that Krecht filled the illegal prescriptions over a long period of time and for others in addition to Montesano, Krecht retracted those inflammatory claims. Although Krecht's lies would not have precluded his eligibility for safety valve relief had he later provided a complete and accurate debriefing of the offense before sentencing, they surely would have been grounds for the government to exercise its discretion and refuse to file a Rule 35 motion on Krecht's behalf. *See, e.g., United States v. Orozco,* 160 F.3d 1309, 1315–16 (11th Cir. 1998) ("Determining whether a motion for reduction of sentence will be filed is reserved to the government, which must ascertain what information the defendant has as well as the truthfulness and usefulness of this information before deciding whether it is appropriate to file a section 5K1.1 motion at sentencing or a Rule 35(b) motion for a convicted defendant thereafter."). Moreover, the government is entitled to exercise its discretion and refuse to file a Rule 35 motion based on its good faith belief that Krecht had lied, regardless of whether it could affirmatively prove that Krecht's statements were false.

## V. CONCLUSION

I **respectfully recommend** that the motion to vacate, set aside, or correct sentence be **denied,** *unless* the district court determines that there is a reasonable probability that it would have given Krecht a lower sentence (i.e., less than 210 months) at a total offense level of 35. In that case, the district court should hold an evidentiary hearing on whether Krecht could have proven his entitlement to the fifth element of the safety value during his initial sentencing hearing.

There is no need for an evidentiary hearing on any of Krecht's other claims, which should be denied in any event, because the undisputed record before the Court establishes that Krecht is not enti-

tled to relief on those claims. *See Pugh v. Smith,* 465 F.3d 1295 (11th Cir.2006).

## VI. OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Rule 4(b), the parties have fourteen (14) days after being served with a copy of this Report and Recommendation to serve and file written objections, if any, with the presiding United States District Judge. Each party may file a response to the other party's objection within fourteen (14) days of the objections. Failure to timely file objections shall bar the parties from a de novo determination by the District Judge of an issue covered in this report and bar the parties from attacking on appeal the factual findings contained herein. *Resolution Trust Corp. v. Hallmark Builders, Inc.,* 996 F.2d 1144, 1149 (11th Cir.1993).

RESPECTFULLY RECOMMENDED in Chambers, at Miami, Florida, this 16th day of May, 2011.